UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION,<br><br>         Plaintiff,<br><br>  - against -<br><br>STEPHEN WALSH, PAUL GREENWOOD, WESTRIDGE CAPITAL MANAGEMENT, INC. WG TRADING INVESTORS, LP, WGIA, LLC,<br><br>         Defendants;<br><br>  - and -<br><br>WESTRIDGE CAPITAL MANAGEMENT ENHANCEMENT FUNDS INC., WG TRADING COMPANY L.P., WGI LLC, K&L INVESTMENTS LLC, AND JANET WALSH,<br><br>        Relief-Defendants. | 1:09-cv-1749 (GBD)<br><br>ECF Case |
| SECURITIES AND EXCHANGE COMMISSION,<br><br>         Plaintiff,<br><br>  - against -<br><br>WG TRADING INVESTORS, LP WG TRADING COMPANY LIMITED PARTNERSHIP, WESTRIDGE CAPITAL MANAGEMENT, INC., PAUL GREENWOOD, AND STEPHEN WALSH,<br><br>         Defendants;<br><br>  - and -<br><br>ROBIN GREENWOOD and JANET WALSH<br><br>        Relief-Defendants. | 1:09-cv-01750-UA (GBD)<br><br>ECF Case |

**MEMORANDUM OF LAW IN SUPPORT OF ORION'S MOTION TO INTERVENE AND FOR CLARIFICATION OF STATUTORY *EX PARTE* RESTRAINING ORDER**

GIBSON, DUNN & CRUTCHER, LLP
200 Park Avenue
New York, New York 10166
(212) 351-4000

*Attorneys for Orion Capital Management LLC and Orion Constellation Partners, LLC*

Dated:    New York, New York
           May 18, 2009

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ............................................................................1

PROCEDURAL HISTORY ................................................................................4

    I.    The SRO is Issued to Freeze the Defendants' and Relief Defendants' Assets. ...........................................................................................4

    II.   The Regulators Misapply the SRO to Freeze Orion's JPM Accounts. ....................6

    III.  Orion Works Assiduously to Demonstrate the Regulators' Error and Facilitate the SRO's Valid Application. ...............................................7

    IV.  The Regulators Offer Infeasible "Relief" From their Invalid Freeze. ........................9

    V.   Orion Seeks Relief from the Court and Requests A Pre-Motion Conference. ........................................................................11

SUMMARY OF ARGUMENT ...........................................................................12

ARGUMENT ...............................................................................................13

    I.    Orion's JPM Accounts Should Be Unfrozen Because None of the Regulators' Stated Reasons for Freezing them Have Any Factual Basis. ............14

    II.   Orion Is Entitled and Should Be Permitted to Intervene in These Actions to Protect its Property from Continued Unjust Impairment. ...............................22

    III.  Any Documents Filed in Support of the Declarations Submitted Herewith Should Be Ordered Filed Under Seal. ......................................23

CONCLUSION ...........................................................................................25

## TABLE OF AUTHORITIES

Page(s)

### Cases

*Bergen Brunswig Corp. v. IVAX Corp.*,
No. 97-2003(PKL), 1998 WL 113976 (S.D.N.Y. Mar. 12, 1998)............................................ 24

*Brennan v. N.Y.C. Bd. of Educ.*,
260 F.3d 123 (2d Cir. 2001). ................................................................................................ 22

*CFTC v. Axess Trade Co.*,
No. 04-3672(RCC), 2005 WL 1384019 (S.D.N.Y. June 9, 2005). ......................................... 4

*CFTC v. Commodity Inv. Group, Inc.*,
No. 05-5741(HB), 2006 WL 353466 (S.D.N.Y., Feb. 11, 2006). ........................................ 16

*CFTC v. Hanover Trading Corp.*,
34 F. Supp. 2d 203 (S.D.N.Y. 1999). ................................................................................... 22

*CFTC v. Lake Shore Asset Mgmt. Ltd.*,
496 F.3d 769 (7th Cir. 2007). ................................................................................................ 4

*DiRussa v. Dean Witter Reynolds Inc.*,
121 F.3d 818 (2d Cir. 1997). ................................................................................................ 24

*Encyclopedia Brown Prod's., LTD. v. Home Box Office, Inc.*,
26 F. Supp. 2d 606 (S.D.N.Y. 1998). .............................................................................. 24, 25

*Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*,
415 U.S. 423 (1974)................................................................................................................ 4

*Grupo Mexicano de Desarrolo, S.A. v. Alliance Bond Fund, Inc.*,
527 U.S. 308 (1999)............................................................................................................... 16

*Home Ins. Co. v. Liberty Mutual Ins. Co.*,
No. 87-0675(SWK), 1990 WL 188925 (S.D.N.Y. Nov. 20, 1990). ..................................... 22

*Liberty Re (Bermuda) Ltd. v. Transamerica Occidental Life Ins. Co.*,
No. 04-5044(NRB), 2005 WL 1216292 (S.D.N.Y. May 23, 2005). ..................................... 24

*N.A. Sales Co., Inc. v. Chapman Indus. Corp.*,
736 F.2d 854 (2d Cir. 1984). .................................................................................................. 4

*Poore v. Fox Hollow Enter's.*,
1994 WL 150872 (Del. Super., March 29, 1994). ................................................................. 15

*SEC v. First City Fin. Corp.*,
890 F.2d 1215 (D.C. Cir. 1989). ........................................................................................... 16

*SEC v. Householder*,
No. 02-4128(BMM), 2005 WL 281222 (N.D. Ill. Feb. 3, 2005)............................ 22

*SEC v. Manor Nursing Ctr's, Inc.*,
458 F.2d 1082 (2d Cir. 1972). ...................................................................... 19

*SEC v. Texas Gulf Sulphur Co.*,
446 F.2d 1301 (2d Cir. 1971). ...................................................................... 16

*SEC v. Unifund SAL*,
910 F.2d 1028 (2d Cir. 1990). ...................................................................... 16

*Sherman v. SEC (In re Sherman)*,
491 F.3d 948 (9th Cir. 2007). ...................................................................... 16

*Std. Inv. Chtd., Inc. v. NASD*,
No. 07-2014(SWK) 2008 WL 199537 (S.D.N.Y. Jan. 22, 2008)..................... 24, 25

*United States v. Amodeo*,
71 F.3d 1044 (2d Cir. 1995). ...................................................................... 23, 24

**Federal Statutes**

7 U.S.C. § 13a-1 .......................................................................................... 16

15 U.S.C. § 78l(g)(1) .................................................................................... 18

15 U.S.C. § 80a-3(c)(7) ................................................................................ 18

**State Statutes**

DEL. CODE ANN. tit. 6, § 18-701 .................................................................... 15

DEL. CODE ANN. tit. 6, § 18-703 .................................................................... 15

N.Y. LTD. LIAB. LAW § 601 ........................................................................... 15

N.Y. LTD. LIAB. LAW § 607(b) ....................................................................... 15

**Federal Rules**

Fed. R. Civ. P. 5.2(d). .................................................................................. 23

FED. R. CIV. P. 24 ......................................................................................... 12

FED. R. CIV. P. 24(b)(2).................................................................................. 22

FED. R. CIV. P. 65(b) ..................................................................................... 3, 4, 12

S.D.N.Y. Local Civil Rule 6.1(d) .................................................................... 12

# PRELIMINARY STATEMENT

The crux of the dispute between the CFTC and SEC (the "Regulators") and Orion has been explained in several letters to the Court: nearly three months ago, the CFTC instructed JPMorgan Chase & Co. ("JPMorgan") to freeze the deposit accounts (the "JPM Accounts") of both Orion Capital Management LLC ("OCM") and Orion Constellation Partners LLC ("OCP," together with OCM, "Orion"), in what Orion contends is a misapplication of the Court's Statutory *Ex Parte* Restraining Order ("SRO"), entered on February 25, 2009. The Regulators are on the verge of putting Orion out of business, when none of OCM, its employees, nor OCP has been accused of wrongdoing, Orion is not controlled by any of the Defendants or Relief Defendants, neither OCM nor OCP is a party to these proceedings, OCM, as the investment advisor of OCP, achieves legitimate results for its investors as a well-regarded investment manager, and OCM and its employees have provided full transparency and cooperation with the Regulators at every step.[1]

Orion has been communicating frequently and fully cooperating with the Receiver and the Regulators *for nearly three months* to provide them with every document and other piece of information they have requested—including an interview with Orion's Chief Executive Officer, Mr. Peter M. Rup.[2]

---

[1] As explained further below, Orion immediately froze the capital accounts of the Defendants and Relief Defendants; Orion removed Mr. Walsh as a signatory on the JPM Accounts; Orion sought and received Mr. Walsh's resignation from his titular positions; Orion substituted the Receiver as the entity controlling any membership interests of the Defendants or Relief Defendants; and Orion substituted the Receiver as the entity controlling SAM's interests in OCM and Sirius.

[2] The Receiver was advised that Orion would seek relief from the Court to unfreeze its JPM Accounts if the Regulators would not correct their misapplication of the SRO, and the

[Footnote continued on next page]

Much of the Regulators' opposition to unfreezing the JPM Accounts rests on the misunderstanding and theoretical supposition that an entity apparently owned and/or controlled by Defendant Stephen Walsh—namely, S.A.M. Group LLC ("SAM"), which is one of the two members of OCM and of Sirius Capital Management LLC ("Sirius," the managing member of OCP)—could possibly own or control some part of Orion's business. This supposition is not supported by either OCM, OCP, or Sirius's respective LLC agreements or Delaware and New York LLC law, which clearly state that a member in an LLC does not own the LLC's assets. This supposition is also not supported by the facts concerning Orion's business because Mr. Rup has sole decision-making authority respecting operations and investments. Even the theoretical possibility that Mr. Walsh controls Orion has already been definitively eliminated, as the CFTC itself (perhaps not realizing the implication for its position) already asserted in a letter to Orion's counsel:

> *"Under Section 23 (page 8) of the SRO, the Court transferred and vested complete and exclusive control of all entities controlled by Mr. Walsh, including SAM, to the equity receiver, Robb Evans & Associates, LLC ("Receiver"). As such, Mr. Walsh is absolutely devoid of any authority to conduct any business or take any actions on behalf of SAM . . . ."*[3]

Orion agrees with the CFTC on this point—Mr. Walsh, through SAM, controls *no part* of Orion. But the Regulators still want Orion's JPM Accounts frozen, citing Mr. Walsh's affiliation with SAM as a principal reason, despite the imminent risk of irreparable harm to Orion, OCP's investors, and Mr. Rup.

---

[Footnote continued from previous page]
Receiver has *never* expressed any opposition to such relief. The Receiver was notified that Orion intended to file this motion and sent a copy of the proposed order prior to filing. *See* Goldsmith Decl. ¶36.

[3] See Goldsmith Decl. ¶33, Ex. H, Letter from P. Haas to B. Goldsmith and A. Lawler, dated Apr. 20, 2009, at 1.

OCP, the Orion investment fund, has an urgent need for the funds in its two JPM Accounts to satisfy a previously-submitted withdrawal request from an innocent third-party investor, requiring a cash payment of approximately $3.8 million on or before May 30, in addition to other legitimate cash needs. This redemption request was made well before these actions were filed. OCM, the Orion investment manager, and an investment adviser registered with the SEC under the Investment Advisers Act of 1940, has an urgent need for the funds in its two JPM Accounts to cover operating expenses, some of which are now seriously past due because of the erroneous freeze. OCM has been unable to pay ordinary and necessary business expenses since the freeze, including payroll; Mr. Rup has been paying such expenses out of his own pocket to keep OCM operating, further exacerbating the urgent need for relief.

If OCP cannot satisfy its contractual obligations to investors and its underlying investments, the entire investment pool is subject to fees, penalties, and litigation; the underlying investments, which have the right to call for capital contributions from their investors, including OCP, will similarly be subject to injury; and everybody (including the receivership estate) loses money. And if OCM cannot fulfill its obligations and fiduciary duties as the investment adviser of OCP, then OCP's investments cannot be managed effectively, and everybody (including the receivership estate) loses money. The Regulators have misconstrued and misapplied the SRO, and this overreaching and refusal for nearly three months to agree to a workable solution is about to cause irreparable injury to everyone involved, in particular innocent non-parties to the CFTC and SEC actions—OCM and OCP's investors.

Non-parties who are adversely affected by a restraining order have standing to seek emergency relief under FED. R. CIV. P. 65, as Orion seeks in the Order to Show Cause, which it submits to the Court herewith. The SRO itself contemplates that further clarification and

possibly modification might be warranted, when it orders financial institutions to prohibit certain transactions "except as directed by further order of the Court."[4] Such "further order of the Court" is warranted here, to avoid imminent and irreparable injury to Orion and Mr. Rup. Orion does not challenge the validity of the SRO.[5] Rather, Orion respectfully petitions the Court to clarify the SRO to correct the Regulators' erroneous misapplication of the SRO, which has frozen the JPM Accounts and threatens irreparable harm to innocent investors, Orion, and OCM's Chief Executive Officer.

## PROCEDURAL HISTORY

### I. THE SRO WAS ISSUED TO FREEZE THE DEFENDANTS' AND RELIEF DEFENDANTS' ASSETS.

On February 25, 2009, Mr. Stephen Walsh and Mr. Paul Greenwood were arrested on charges of conspiracy, securities fraud, and wire fraud. Goldsmith Decl. ¶9. The same day, the CFTC filed a complaint against Mr. Walsh and a number of other Defendants and Relief Defendants, including WG Trading Investors, LP ("WGTI"), K&L Investments LLC ("K&L"),

---

[4] Goldsmith Decl. ¶14, Ex. A, at 6. Moreover, the Court is "vested with equitable discretion over statutory injunctions." *CFTC v. Axess Trade Co.*, No. 04-3672(RCC), 2005 WL 1384019, at *4 (S.D.N.Y. June 9, 2005); *see also N.A. Sales Co., Inc. v. Chapman Indus. Corp.*, 736 F.2d 854, 858 (2d Cir. 1984); *CFTC v. Lake Shore Asset Mgmt. Ltd.*, 496 F.3d 769, 771–72 (7th Cir. 2007).

[5] As the letter from Paul Gizzi (SEC) to Judge George B. Daniels, dated May 4, 2009, concedes, a preliminary injunction has not been entered in these actions. The docket in the SEC matter indicates that the Court entered the order to show cause for a temporary restraining order ("TRO"), and granted the one-time 10 day extension, pursuant to Rule 65(b). So the Rule 65(b) expiration date should apply to the TRO. *See Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 440 n.15 (1974). There is also a genuine question whether the SRO might also have expired, if Rule 65 procedures apply. *See, e.g., CFTC v. Lake Shore Asset Mgmt. Ltd.*, 496 F.3d 769, 772 (7th Cir. 2007) ("Because the ex parte order has lasted more than 20 days, it must be vacated.").

Janet Schaberg (former wife of Mr. Walsh, "Ms. Walsh"), and others, in an enforcement action under the Commodity Exchange Act alleging material misrepresentations and omissions and misappropriation in connection with an investment company managed by the Defendants. Goldsmith Decl. ¶10. Also on that day, the SEC filed a parallel complaint against Mr. Walsh and a number of other Defendants and Relief Defendants, including WGTI, Ms. Walsh, and others, alleging similar violations. Goldsmith Decl. ¶12–13.

In separate motions, the CFTC and SEC sought to freeze the assets of the Defendants and Relief Defendants through *ex parte* restraining orders.[6] Goldsmith Decl. ¶¶11 & 13. The Court granted both motions. The CFTC's statutory *ex parte* restraining order (the "SRO"), directs that:

> any financial or brokerage institution, business entity, or person that holds, controls, or maintains custody of any Defendants' asset or account, or account established by Defendants on behalf of any other entity or person, including a commodity pool, or Relief Defendants' accounts or assets, or has held, controlled, or maintained custody of any account or asset of the Defendant or Relief Defendants at any time since January 1, 1997 [shall p]rohibit Defendants and Relief Defendants and all other persons from withdrawing, removing, assigning, transferring, pledging, encumbering, disbursing, dissipating, converting, selling or otherwise disposing of any such asset (other than to margin existing futures or securities positions) except as directed by further order of the Court.

Goldsmith Decl. ¶14, Ex. A, SRO, at 6. In the SRO, the Court also appointed Robb Evans & Associates LLC (the "Receiver") to be the temporary equity receiver for the Defendants' and Relied Defendants' assets, and directed the Receiver to "[a]ssume full control of the corporate Defendants and Relief Defendants and any business entities owned by any Defendant or Relief Defendant . . . ." Goldsmith Decl. ¶14, Ex. A, SRO, at 8.

---

[6] Because it appears that the JPM Accounts have been frozen pursuant to the CFTC's restraining order, we address that order principally. Insofar as the SEC order remains in effect, *see supra* n.5, the same arguments sent forth herein demonstrate Orion's right to relief.

## II. THE REGULATORS MISAPPLY THE SRO TO FREEZE ORION'S JPM ACCOUNTS.

Orion has four deposit accounts with JPMorgan Chase & Co. with an aggregate balance of approximately $6.84 million (the "JPM Accounts"). Rup Decl. ¶¶3 & 64. Each of OCM and OCP have a checking and money market account that contain funds.[7] *Id.* at ¶3. Purely as an internal control, Mr. Walsh was originally listed as a signatory on the JPM Accounts when they were opened, in case of Mr. Rup's death or incapacitation. Rup. Decl. ¶60. But (by way of illustrating Mr. Walsh's lack of control) Mr. Walsh was not authorized to write checks in excess of $5,000 without a dual signature. *Id.* And he never had the authority to approve or release wire transfers from OCM, OCP, or OCP Ltd. *Id.* Only Mr. Rup could do that. *Id.* Indeed, it appears that Mr. Walsh never did sign a check or draw funds from any of the JPM Accounts. Rup Decl. ¶61. On February 23, 2009, once Mr. Rup had learned about the investigations into Mr. Walsh's activities, Mr. Rup immediately removed him as a signatory on the JPM Accounts. *Id.* ¶62.

Sometime after the SRO was issued and as a precaution, JPMorgan contacted an attorney at the CFTC requesting guidance as to whether Orion's JPM Accounts should be frozen under the SRO. Goldsmith Decl. ¶15. Without inquiring of Orion or asking for any information about the relationship between Orion and those accused of wrongdoing in the enforcement actions, CFTC counsel apparently directed JP Morgan to freeze Orion's JPM Accounts. *Id.* So JPMorgan froze Orion's JPM Accounts. *Id.*; Rup Decl. ¶¶3 & 65.

---

[7] OCP's offshore affiliate, Orion Constellation Partners Ltd. ("OCP Ltd."), has an account with a zero balance.

Orion's counsel, Gibson, Dunn & Crutcher LLP ("Gibson, Dunn"), notified the Receiver by letter of the erroneous freeze on March 4, 2009, explaining the pressing need Orion had for rightful access to its funds, to cover such short-term necessities as operating expenses and scheduled investor redemptions. Goldsmith Decl. ¶17. In this letter, Gibson Dunn provided information concerning a number of aspects of Orion's business, ownership, management, investment process, earned fees, and investors. *Id.* Gibson Dunn also offered the Receiver assurances that Orion would take all necessary steps to ensure that the SRO was honored. *Id.* at ¶16.

## III. ORION WORKS ASSIDUOUSLY TO DEMONSTRATE THE REGULATORS' ERROR AND TO FACILITATE THE SRO'S VALID APPLICATION.

In the almost three months since Gibson, Dunn and Orion began discussions with the Regulators and the Receiver regarding the erroneous freeze of the JPM Accounts, Gibson, Dunn and Orion have participated in over 20 telephone conferences, Goldsmith Decl. ¶20, and sent numerous substantive letters and/or e-mails conveying detailed information with schedules and documents concerning every aspect of Orion's business structure. Goldsmith Decl. ¶¶17–18. Orion has already provided to the Court the cover letters sent to the CFTC and SEC providing detailed information and documents requested by the Receiver and the Regulators. Orion complied with every request fully and promptly. *Id.* ¶19. Orion has provided comprehensive documentation to the regulators concerning its operations, corporate structure and LLC membership rights, bank accounts, OCP's investors, its investments, and all available financials (audited and unaudited)—in particular, concerning the investments and capital accounts[8] of the

---

[8] N.B.: A capital account is not a bank account with a cash balance; it is an accounting entry that reflects the value of the OCP member's equity stake in the LLC. Thus, a member cannot

[Footnote continued on next page]

Defendants, Relief Defendants, and entities owned or controlled by them. Goldsmith Decl. ¶¶17–18. In addition, Orion provided detailed information concerning liquidation payments, withdrawals, distributions and other transfers involving these persons and entities, as well as information about the unaffiliated third-party administrator for OCP. *Id.* Orion has provided detailed answers, supported by extensive documentation, to every question posed, and provided every agreement, record, or other document that they have requested. Goldsmith Decl. ¶25.[9] In sum, Orion has made itself an "open book" to the Regulators and the Receiver.

Orion's cooperation with the Receiver and the Regulators in their enforcement against the Defendants and Relief Defendants has been timely and complete. Rup Decl. ¶48–56. Before the instant actions were filed, when the National Futures Association ("NFA") advised Mr. Rup that it had issued a Member Responsibility Action ("MRA") against Messrs. Walsh and Greenwood, which included an asset freeze order, Mr. Rup caused Orion to comply with it immediately and acknowledged to the NFA that he was doing so. Rup Decl. ¶49. Orion blocked the distribution or withdrawal of any assets to either of them or to companies they may control. *Id.* Likewise, immediately after Orion learned of the SRO, Mr. Rup made it absolutely clear that no distributions would be made to or withdrawals made by any of Mr. Walsh, Mr. Greenwood, K&L, WGTI, SAM, or Ms. Walsh, which are the only Defendants or Relief Defendants (or other entities known by Mr. Rup to have been owned or controlled by any of them) that had debt or

---

[Footnote continued from previous page]
    withdraw funds from, and the Managing Member cannot liquidate, a capital account in the same manner as a bank account.

[9] Orion has fully cooperated with the Regulators and the Receivers since being advised of the investigations into, and then charges against, the Defendants. OCM has undergone on-site examinations by both the SEC (February 2009) and NFA (in April 2009). Following these examinations, Orion has only received instructions from the NFA to make minor corrections, typical for management companies following a first-time inspection. Rup Decl. ¶¶46-47.

equity interests in OCP, OCM, or Sirius. Rup Decl. ¶¶50 & 52. Orion has taken steps to ensure that any amounts payable to the Defendants or Relief Defendants will be preserved in accordance with the SRO during the pendency of these actions, and disposed of in accordance with the Receiver's and/or the Court's instructions. Rup Decl. ¶52. Orion also requested and received Mr. Walsh's resignation as Director of OCP, Manager of OCM, Manager of Sirius, and member of the OCP investment committee. Rup Decl. ¶58.

As added assurance that the Receiver would maintain complete control over and manage the assets of the Defendants and Relief Defendants, Orion repeatedly offered in writing to the Regulators and the Receiver, that it would (a) substitute the Receiver as the entity controlling the Defendants' or Relief Defendants' equity interests in OCP, and (b) segregate into separately identified accounts any and all liquid funds that become payable to any of the Defendants and Relief Defendants by virtue of their equity and debt investments. Rup Decl. ¶52–54. Thereafter, Orion did in fact transfer to the Receiver control over all Class A Membership Interests that K&L, WGT, and Ms. Walsh held in OCP. Goldsmith Decl. ¶31; Rup Decl. ¶¶52–54. On May 14, 2009, Orion formally substituted the Receiver as the entity controlling SAM's equity interest in both Sirius and OCM, and advised the Receiver and the Regulators that such action had been taken. Goldsmith Decl. ¶31.

## IV. THE REGULATORS OFFER INADEQUATE "RELIEF" FROM THEIR INVALID FREEZE.

In early April, Gibson, Dunn explored with the Regulators and the Receiver the possibility of submitting a letter for the Court's approval in which Orion would represent and warrant that it was taking a variety of measures to safeguard the Defendants' and Relief Defendants' assets that all parties acknowledge are properly the subject of the asset freeze. In exchange, the Regulators and the Receiver were to consent to unfreezing the remainder of

OCM's and OCP's JPM Accounts that have nothing whatsoever to do with the Defendants and Relief Defendants. Goldsmith Decl. ¶21.

Over the next two weeks, Gibson, Dunn participated in telephone conferences with the Regulators and the Receiver concerning such a letter. *Id.* ¶22. Several drafts of the letter were exchanged, and it appeared that a stipulated resolution to unfreeze the JPM Accounts was about to be reached. *Id.* However, these negotiations veered abruptly off-course when the CFTC demanded that Orion liquidate approximately $29.4 million of OCP's investments so as to immediately pay the entire value of the Defendants' and Relief Defendants' equity interest in OCP to the Receiver in cash. *Id.* ¶23. Orion could not accept this offer, with which it was impossible for Orion to comply. *Id.* ¶24. Indeed, the Regulators were well-aware of the time parameters for redeeming investments and the fact that OCP's investments were in large part illiquid and could not be liquidated in the five days proposed by the Regulators. *Id.*; Rup Decl. ¶¶72–73 & 79. Moreover, to do what the Regulators asked would harm innocent Orion investors and be contrary to the terms of the LLC agreement. *Id.*; Rup Decl. ¶¶73 & 75.[10]

---

[10] The CFTC also offered to permit JPMorgan to unfreeze an OCP account with approximately $260,000 on deposit. Orion could not accept this offer either; the Regulators were well-aware that OCP had an obligation to pay well in excess of that amount (*i.e.*, approximately $3.8 million) in partial satisfaction of a long-pre-existing withdrawal request made by an innocent investor that was payable by or before May 30, 2009. Rup Decl. at ¶70. Moreover, OCM had cash needs too, to meet its ordinary business expenses, including payroll. Rup Decl. ¶67. Furthermore, the CFTC's offer was contrary to OCM's Management Agreement and the Investment Advisors Act of 1940. It would be inappropriate (and illegal) for OCM as a fiduciary, to pay its own expenses out of an OCP fund account. It had become clear that over two-months-worth of Orion's good-faith efforts would not elicit a reasonable solution from the Regulators.

## V.  ORION SEEKS RELIEF FROM THE COURT AND REQUESTS A PRE-MOTION CONFERENCE.

After the final fruitless round of discussions with the Regulators, Orion wrote to the Court, on April 29, 2009, to explain the nature of the dispute, articulate Orion's urgent need for the funds in the JPM Accounts, and request a pre-motion conference with the Court, the Regulators, and the Receiver. Goldsmith Decl. ¶25, Ex. B. Orion did this to narrow the issues in dispute between the parties (there should be very little, in light of the extensive disclosure Orion has provided to the Regulators and Receiver), in order to simplify and focus any necessary motion practice. *Id.*

The CFTC responded on May 1, 2009, taking the view that "there is no exigency because Orion has inexplicably spurned reasonable offers from the [Regulators]." Goldsmith Decl. ¶26, Ex. C. It also explained the basis of its opposition to Orion's requested clarification of the SRO, which focused on Mr. Walsh's connection, via SAM, to OCM and Sirius and the capital accounts of K&L, WGTI, and Ms. Walsh. Orion responded on May 4, 2009 to reiterate both sides' "mutual desire to preserve assets that are properly the subject of the asset freezes ordered by the Court," but also to correct several apparent misconceptions contained in the CFTC's letter. These included mistakes regarding K&L, WGTI, and Ms. Walsh's respective "capital accounts" (which the CFTC seems to think are buckets of readily-available cash, like bank accounts, rather than a "books and records" accounting entry), Mr. Walsh's purported involvement in Orion (which the CFTC continues to assert, despite the SRO vesting the Receiver with control of his interest in SAM, Mr. Walsh's resignations, his removal as a signatory, and his historical lack of involvement and contractual lack of authority respecting Orion's investment decisions), and the feasibility of their offer to unfreeze one account (which OCM could not use at all and which had insufficient funds to meet OCP's urgent needs). Goldsmith Decl. ¶27, Ex. D.

The SEC responded on May 4, 2009, taking the view that Orion's JPM Accounts were properly frozen for largely the same reasons as the CFTC, namely, because of Mr. Walsh's interest in SAM and because K&L, WGTI, and Ms. Walsh are investors in OCP. Goldsmith Decl. ¶28, Ex. E.

Orion responded on May 6, 2009, again stating that it had already frozen the capital accounts of K&L, WGTI, and Ms. Walsh and welcomed the Court's involvement in crafting a resolution. Goldsmith Decl. ¶29, Ex. F. Orion had already explained the numerous steps it had taken to quarantine Mr. Walsh and SAM from OCM and Sirius.

## SUMMARY OF ARGUMENT

- This Memorandum and the Declarations of Peter M. Rup and Barry R. Goldsmith submitted herewith clearly and specifically state good and sufficient reasons supporting Orion's petition to intervene and for emergency relief—namely, the imminent threat to the capital of innocent investors, the survival of Orion's business, and the reputation of its Chief Executive Officer caused by the Regulators' persistent misapplication of the SRO—thus satisfying the requirements of Local Civil Rule 6.1(d) and FED. R. CIV. P. 24 and 65(b). Orion has not previously moved for emergency relief in these actions.

- The Regulators incorrectly suggest that they can freeze OCP's JPM Accounts because K&L, WGTI, and Ms. Walsh own membership interests in OCP, which may be frozen. The Regulators have no equitable claim to freeze assets of an innocent non-party LLC (in which two-thirds of the equity was contributed by investors who are innocent non-party co-investors), especially where Orion has already frozen the capital accounts of these three parties and substituted the Receiver as the entity controlling their membership interests in OCP. The Regulators position also obliterates the distinction, which is one core purpose of

LLC law and Orion's LLC agreements, between the personal property of individual members (*i.e.*, their respective membership interests in the LLC), and the company property of the LLC (*e.g.*, the JPM Accounts).

- The Regulators incorrectly claim that they can freeze Orion's JPM Accounts because Mr. Walsh controls OCM via SAM, which is a member of OCM LLC with a 50 percent equity interest. Mr. Walsh never in fact controlled OCM or OCP through SAM, and does not even have a theoretical potential to do so now because the Receiver has assumed control of SAM. Mr. Walsh has resigned from his titular positions at OCM, OCP and Sirius. And, the Receiver alone has the authority to appoint a replacement to OCM's Board of Managers. Mr. Rup is the sole manager and has sole control of OCM's day-to-day operations.

- The Regulators are simply incorrect in claiming that Orion has "refused" to segregate and liquidate K&L, WGTI, and Ms. Walsh's accounts. Capital accounts are accounting entries, not buckets of cash; they reflect a member's *pro rata* interest in \underlying illiquid fund investments. Orion could not *segregate on five days notice a* pro rata *portion* of those investments any more than a breeder could segregate a *pro rata* portion of a horse. And they cannot be liquidated or transferred on demand; aside from the penalties and fees that would dissipate equity, to be illiquid *just means* to lack a ready market.

## ARGUMENT

The CFTC and SEC have joined issue with Orion's request for relief from the misapplied asset freeze. So each one of the reasons they have offered for the freeze is addressed in turn below.

# I. ORION'S JPM ACCOUNTS SHOULD BE UNFROZEN BECAUSE NONE OF THE REGULATORS' STATED REASONS FOR FREEZING THEM HAVE ANY FACTUAL BASIS.

The CFTC asserts that the SRO has properly been applied to freeze Orion's JPM Accounts. This assertion is wrong because Orion's JPM Accounts are not assets owned or controlled by the Defendants or Relief Defendants or any entities they own or control.

## A. Walsh No Longer Controls S.A.M. Group LLC—the Receiver does.

The CFTC asserts that SAM is under the control of Defendant Stephen Walsh. This assertion is false *as the CFTC's own letter*, dated April 20, 2009, to Gibson Dunn clearly states: "Under Section 23 (page 8) of the SRO, the Court transferred and vested complete and exclusive control of all entities controlled by Mr. Walsh, including SAM, to the equity receiver, Robb Evans & Associates, LLC ("Receiver"). As such, Mr. Walsh is absolutely devoid of any authority to conduct any business or take any actions on behalf of SAM . . . ."[11] Goldsmith Decl. ¶33, Ex. H. If Mr. Walsh has no control over and no interest in SAM, then none of the Defendants or Relief Defendants have any control over or interest in OCM or Sirius; *a fortiori*, none of the Defendants or Relief Defendants have any control over or interest in *any* of Orion's accounts at *any* bank, including the JPM Accounts.

## B. None of the Defendants or Relief Defendants Owns or Controls an Interest in OCP Anymore—the Receiver Does.

The CFTC asserts that Orion's JPM Accounts are properly frozen because K&L, WGTI, and Ms. Walsh have capital accounts at OCP with an aggregated total of approximately $29.4

---

[11] Paragraph 23(a) of the SRO directs the Receiver to "[a]ssume full control of . . . any business entities owned by any Defendant or Relief Defendant . . . by removing any officer, independent contractor, employee, or agent of a corporate defendant or corporate relief defendant, from control and management of the affairs of . . . any business entities owned by any Defendant or Relief Defendant." Goldsmith Decl. ¶14, Ex. A, at 8.

million. This assertion is false because, first, the stated rationale is irrelevant to three of the five JPM Accounts (*i.e.*, those held by OCM and OCP Ltd.) and, second, Orion has already frozen these capital accounts and transferred control over each of them to the Receiver. Under the SRO, K&L, WGTI, and Ms. Walsh no longer have control over any equity interest in OCP; the Receiver does. Orion formalized that fact by substituting the Receiver as the entity controlling their equity interests.

### C. The Regulators Have No Right To Freeze Orion's JPM Accounts Because Members of an LLC Have No Property Interest in the LLC's Bank Accounts.

The Regulators' position in this case suffers generally from an apparent misconception about the nature of SAM's membership interest in OCM (a New York LLP) and Sirius (a Delaware LLP) and K&L, WGTI, and Ms. Walsh's respective membership interests in OCP (a Delaware LLP). Those membership interests do not give the members any property interest in Orion's JPM Accounts.[12] "[T]he interest of a member in the LLC is analogous to shareholders of a corporation. A member usually contributes personal property and *has no interest in specific assets owned by the LLC*."[13] The SRO does not reach the JPM Accounts because they are not

---

[12] *See, e.g.*, Rup Decl. ¶35, Ex. C, OCP LLC Agreement, Section 1.06: "All property, whether real or personal, tangible or intangible, of the Fund shall be owned by and held in the name of the Fund as an entity (or by an entity directly or indirectly owned by the Fund in whole or in part), and no Member shall have any ownership interest in such property other than as a Member hereof.... [N]o asset of the Fund shall be transferred or encumbered for, or in payment of, any individual obligation of any Member."

[13] *Poore v. Fox Hollow Enter's.*, 1994 WL 150872, at *2 (Del. Super., March 29, 1994) (citing DEL. CODE ANN. tit. 6, § 18-701 ("A limited liability company interest is personal property. A member has no interest in specific limited liability company property.")); *see also* NY LTD. LIAB. LAW § 601 (same). The same result obtains if the Court were to order disgorgement and/or forfeiture against any of the Defendants or Relief Defendants because creditors (in this case, judgment creditors) of members of an LLC cannot reach the assets of the LLC. *See* DEL. CODE ANN. tit. 6, § 18-703; N.Y. LTD. LIAB. LAW § 607(b); *Sherman v.*

[Footnote continued on next page]

assets to which Defendants or Relief Defendants have a "legal or equitable interest in, right to, or claim." *See* Goldsmith Decl. ¶14, Ex. A, SRO ¶12 (definition of "Asset").

An asset freeze is relief that is ancillary to the statutory injunction available to the CFTC under 7 U.S.C. § 13a-1.[14] As such, an asset freeze must be remedial—that is, it must be tailored to secure sufficient funds to satisfy remedies such as disgorgement and forfeiture.[15] Because this Court's order only extends to "the property causally related to the wrongdoing," the CFTC misconstrues the SRO's legitimate scope when it asserts that Orion's JPM Accounts can be frozen under the SRO.[16] The Supreme Court has held that assets may not be frozen where the plaintiff fails to assert any equitable interest in them.[17] Here, the CFTC has no equitable interest in any of the LLC assets, which are not the property of the Defendants or Relief Defendants. The CFTC has overreached and misconstrued the legitimate scope of this Court's valid SRO by freezing the JPM Accounts, which bear no reasonable connection either to the Defendants' and Relief Defendants' assets or the Defendants alleged conduct at issue in these actions.[18]

The CFTC asserts that Orion's JPM Accounts, totaling $6.84 million, are properly frozen

---

[Footnote continued from previous page]
 *SEC (In re Sherman)*, 491 F.3d 948, 965 (9th Cir. 2007) (SEC qualifies as a creditor of the receivership estate with respect to disgorgement order).

[14] *See SEC v. Unifund SAL*, 910 F.2d 1028, 1041 (2d Cir. 1990).

[15] *See, e.g., SEC v. Texas Gulf Sulphur Co.*, 446 F.2d 1301, 1308 (2d Cir. 1971); *CFTC v. Commodity Inv. Group, Inc.*, No. 05-5741(HB), 2006 WL 353466, at *2-3 (S.D.N.Y., Feb. 11, 2006).

[16] *SEC v. First City Fin. Corp.*, 890 F.2d 1215, 1231 (D.C. Cir. 1989).

[17] *See Grupo Mexicano de Desarrolo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 330-33 (1999).

[18] *Cf. Commodity Inv. Group*, 2006 WL 353466, at *2-3 (petition for asset freeze rejected insofar as CFTC failed to provide specific information establishing a sufficient nexus connecting defendants' personal assets and the sum that could possibly be subject to any potential equitable remedy).

because at most approximately $940,000 is payable to SAM and WGTI as loans that OCM rightfully received under the OCM LLC Agreement. This assertion is false because the CFTC has only even alleged an equitable interest in 14% of the funds on deposit in the JPM Accounts. Rather than freezing the maximum equitable interest that it could possibly have against OCM in this regard, the CFTC prefers to shutter the business by denying it any operating capital.

### D. There Are Other Legitimate Ways to Freeze the Defendants' and Relief Defendants' Assets, Several of Which Orion Has Itself Already Undertaken.

The CFTC asserts that the only way to freeze any of the assets of K&L, WGTI, and Ms. Walsh is to freeze Orion's JPM Accounts, which are assets unrelated to these parties' membership interests in OCP. This assertion is meritless because the Receiver has already taken control of these parties' capital accounts and has already exercised such control with respect to WGTI by commencing liquidation. And this process has nothing to do with Orion's JPM Accounts. So clearly there is another way—the Receiver has already used it.

The CFTC asserts that Orion has refused to withdraw and segregate K&L's, WGTI's, and Ms. Walsh's "funds." This assertion is incorrect for three reasons. First, Orion has offered to undertake every feasible measure and precaution to preserve these parties' investments and prevent any capital from returning to them. Second, there are no "funds" to withdraw and segregate; their investments are illiquid, as the CFTC acknowledges. Third, the CFTC suggests a measure (immediate withdrawal from underlying illiquid investments) that, even if it were possible, would materially *reduce* the value of these parties' investments (and the investments of the other 19 innocent investors) because of early termination fees, penalties, and increased risk due to artificial interference in the fund's investment strategy and liquidity profile, which are fundamental components of risk management and OCP's obligations as a fiduciary and

registered investment adviser.[19] The CFTC neglects the financial realities and legal constraints of its own proposal.

The practical effect of the CFTC's position in this case is that the capital contributions of an investor who has done nothing wrong can be frozen simply because *some other investor* in the same investment fund is alleged to be a bad actor. Most investment companies would be subject to this overreaching policy; the investors whose assets would be subject to such arbitrary freeze include such categories of major institutional investors as pension funds, charitable foundations, and endowments, which are also the categories of investors that could be harmed by the Regulators' treatment of Orion. The notion that one bad actor—*e.g.*, one of up to 499 investors,[20] in typical private investment fund classified under 15 U.S.C. § 80a-3(c)(7) or any number of a registered investment company, such as s mutual fund—can literally "poison the well," and subject unrelated fund assets (like the JPM Accounts in this case) to a arbitrary freeze, will have chilling consequences in the financial industry. Orion thus moves the Court to clarify (or, if necessary, to modify) the SRO to lift the freeze of Orion's JPM Accounts because the initial freeze was unnecessary, unjustified, and inequitable.

In one Second Circuit case, even where the party subjected to the freeze was charged with fraud, failed to provide evidence about, *e.g.*, the value and location of the assets and where there was a danger that the victim's money would be wasted, the Court of Appeals nonetheless

---

[19] In particular, OCP's withdrawal rights in the underlying investments are extremely limited and often delayed for years, sometimes may only occur on either a quarterly or annual basis, and, where permitted, require between 45 and 360 days advanced notice. Rup Decl. ¶72. Aside from the penalties and fees, forced liquidation disrupts the investment manager's strategic allocation of investments, which exposes investors to unintended risks. *Id.* & ¶73.

[20] The limitation to under 500 investors derives from Section 12(g)(1) of the Securities Exchange Act of 1934.

instructed that "the disadvantages and possible deleterious effect of a freeze must be weighed against the considerations indicating the need for such relief."[21] In this case, Orion has been charged with nothing; throughout its nearly three months of discussions with the Receiver and the Regulators, there has never even been a suggestion of wrongdoing on Orion's part. Orion is a non-party, and has provided every piece of information and every document the Regulators and the Receiver have requested. There has been no allegation of a risk of waste. Quite the contrary—freezing the JPM Accounts will cause Orion's business operations to grind to a halt, virtually guaranteeing that whatever equitable interest the Regulators could possibly assert with respect to K&L, WGTI, and Ms. Walsh's respective equity interests will dissipate. There are no considerations indicating a need to freeze Orion's JPM Accounts. There are only disadvantages to the Regulators' misapplication of the freeze. Second Circuit precedent and principles of equity require the freeze to be lifted.

### E. The Regulators' Offer to Unfreeze One Small Account That Offered Insufficient Funds to One Orion Entity, OCM, and Offered Nothing to the Other, OCP—Yet *Each* Needs Sufficient Cash.

The CFTC asserts that it offered to unfreeze funds to cover certain expenses but that Orion refused the offer. This assertion is true, but misleading in two respects.

First, as Orion has already documented for the Regulators, OCP must satisfy a redemption request by an innocent third-party investor that was submitted and effective as of March 2009, which requires OCP to pay out approximately $3.8 million *on or before May 30, 2009* (with over $1 million more payable sometime thereafter). Rup Decl. ¶70. OCP also must be able to honor withdrawal requests submitted by other investors (*i.e.*, other than K&L, WGTI,

---

21 *See SEC v. Manor Nursing Ctr's, Inc.*, 458 F.2d 1082, 1106 (2d Cir. 1972).

and Ms. Walsh, whose accounts have been frozen) and satisfy any capital calls that arise from OCP's underlying investments. Rup Decl. ¶¶70 & 77. In response to OCP's demonstrated need of at least $3.8 million before May 30, the Regulators did not offer to release any funds to satisfy pending and future redemptions. Instead, they offered to unfreeze a single OCP JPM Account with a balance of $259,000, but only to pay a portion of the outstanding expenses of OCM. This was obviously not an offer that would resolve OCP's obligation to its investors.

Second, as Orion has already documented for the Regulators, OCM has been, and remains seriously past due on its payables for rent, office expenses, software licenses, and fees to OCP's administrator. Rup Decl. ¶67. Such expenses are normally paid out of the quarterly management fees payable by OCP to OCM. *Id.* However, because of the asset freeze, OCP was not able to pay to OCM its fee for the second quarter, which was due on April 1. *Id.* Mr. Rup has advanced payroll for employees out of his own pocket. *Id.* ¶69. Neither Mr. Rup nor OCM's Chief Operating Officer, David Duebendorfer, have received any salary since the JPM Accounts were frozen more than three months ago. *Id.* In response to OCM's demonstrated need for cash to meet operating expenses, the Regulators did offer to release a single *OCP* account, from which OCM has no right to withdraw to pay its own expenses; indeed, OCM has a fiduciary duty under the Management Agreement and the Investment Advisors Act of 1940 *not to do so.* Rup Dec. ¶75. Accordingly, the CFTC correctly observes, OCM refused the offer.

The CFTC asserts that unfreezing the JPM Accounts would permit Orion to "dissipate" its limited liquid assets. This assertion is false because cash is needed to operate the investment manager, which is legally and contractually obligated to act in the best interests of OCP and its investors. If the fund manager cannot operate, everybody loses. Orion has already taken steps to prevent funds from being transferred to or withdrawn by Mr. Walsh. Goldsmith Decl. ¶31; Rup

Decl. ¶¶49–54. And since the SRO was issued, the reality is that Mr. Walsh no longer has control over SAM and any actions undertaken by SAM can only be undertaken by the Receiver.

### F. Walsh Never Co-owned Orion Because He Never Co-Owned the Fund, Which is an LLC with 23 Investor Members.

The CFTC asserts that Mr. Walsh shares joint ownership with Mr. Rup *of Orion* because of Mr. Walsh's interest in SAM. This assertion is false for three reasons. First, the CFTC has confused ownership of a company's assets (*e.g.*, OCP's JPM Accounts), which is the sole property of the company, with a membership interest in a company, which is the personal property of the members and is, thus, the sort of interest Mr. Walsh had in OCM and Sirius. Second, the CFTC erroneously concludes that Mr. Walsh has a 50 percent ownership interest in OCP (an investment fund, with 23 members) because he has a 50 percent ownership interest in one of OCP's members, *i.e.*, Sirius, the managing member. Third, as explained above, Mr. Walsh no longer has any control over SAM; *a fortiori* he has no control over OCM or Sirius.

### G. Whatever Fees Mr. Walsh Might Have Earned Improperly May Only Be Recouped From the Defendant Himself.

The CFTC asserts that OCM and Sirius earned illegitimate fees on misappropriated investor funds that directly enriched Mr. Walsh. This assertion is unsupported in the CFTC's letter by any specific factual allegations to permit the Court or Orion to evaluate it (such as the amount that Mr. Walsh might have received or whether any such fees might be management fees paid through OCM to SAM or might be a performance allocation paid through Sirius to SAM). But observing the illogic of the Regulators position is refutation enough. If the JPM Accounts contain cash-on-hand, which hasn't been distributed to anyone (especially not to Mr. Walsh or SAM), then the cash hasn't unjustly enriched Mr. Walsh. If the Regulators seek to prevent Mr. Walsh from being unjustly enriched via SAM through his "self-dealing," then they can levy against Mr. Walsh and SAM. The Regulators have not alleged that OCM engaged in self-

dealing or acted inconsistently with its obligations under the Management Agreement, which

legitimately entitles OCM to earn management fees from OCP.[22]  This issue is a red herring.

## II.    ORION IS ENTITLED AND SHOULD BE PERMITTED TO INTERVENE IN THESE ACTIONS TO PROTECT ITS PROPERTY FROM CONTINUED UNJUST IMPAIRMENT.

"To intervene as of right, a movant must: (1) timely file an application, (2) show an

interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the

action, and (4) show that the interest is not protected adequately by the parties to the action."[23]

First, Orion's motion is timely because it has sought relief from the Court shortly after

the CFTC made it clear that there would be no out-of-court resolution of this dispute.  Second,

Orion has an interest in the rightful access and use of its assets.  Third, Orion's interest has been,

is presently, and will continue to be impaired by the CFTC's misapplication of this Court's SRO.

Fourth, none of the current parties to the CFTC and SEC actions have adequately protected

Orion's interests in the rightful access and use of its assets.[24]  If Orion cannot access these

assets, then OCP cannot operate and the fund will fail to meet its obligations; if OCP cannot

operate or meet its obligations, then the equity interests of the Defendants and Relief Defendants

in OCP will be diminished by penalties, further litigation, and forced liquidation of the

underlying investments.  Despite these obvious repercussions, neither the CFTC nor the SEC has

---

22  *See CFTC v. Hanover Trading Corp.*, 34 F. Supp. 2d 203, 207 (S.D.N.Y. 1999).

23  *Brennan v. N.Y.C. Bd. of Educ.*, 260 F.3d 123, 128–29 (2d Cir. 2001); *see also SEC v. Householder*, No. 02-4128(BMM), 2005 WL 281222, *3 (N.D. Ill. Feb. 2, 2005); *Home Ins. Co. v. Liberty Mutual Ins. Co.*, No. 87-0675(SWK), 1990 WL 188925, at *2 (S.D.N.Y. Nov. 20, 1990).

24  In the alternative, this Court should permit OCM and OCP to intervene in this action, under FED. R. CIV. P. 24(b)(2), because they have a claim "that shares with the main action a common question of law or fact," namely whether OCM's and OCP's assets have been properly frozen under the SRO.

recognized the interest of the alleged victims (who might acquire an interest in K&L's, WGTI's, and Ms. Walsh's respective investments in OCP) letting Orion manage its investors' capital.

## III.    ANY DOCUMENTS FILED IN SUPPORT OF THE DECLARATIONS SUBMITTED HEREWITH SHOULD BE ORDERED FILED UNDER SEAL.

Insofar as documents (such as the various documents Orion has provided to the Regulators) supporting the representations contained in the Declaration of Peter Rup and the Declaration of Barry R. Goldsmith (submitted in support of this motion) would facilitate and better inform the Court's consideration of Orion's motion to intervene and clarify the SRO, Orion respectfully requests that the Court order, pursuant to Fed. R. Civ. P. 5.2(d), that such documents be filed under seal. Such documents include the LLC Agreements of several privately-held entities, bank account numbers and balances, identities and capital positions of investors, identities of OCP's underlying investments and certain contractual terms of those investments, and other private and sensitive business information.[25]

Under Second Circuit precedent, the question of whether documents should be filed under seal depends upon whether the pubic has a presumptive right of access to them.[26] There is no presumptive right of access in this case because Orion's documents reflect Orion's and its investor's confidential financial information, which Orion is contractually obligated to keep confidential. "[T]he decision whether to seal court records requires weighing [1] the importance

---

[25] Orion has submitted two declarations in support of its motion, which are sufficient to establish good cause to grant the relief requested. But Orion will also file expanded declarations with supporting exhibits, if the Court finds that additional evidence would be helpful to its deliberation.

[26] *See United States v. Amodeo*, 71 F.3d 1044, 1048-52 (2d Cir. 1995).

of the presumption of public access, depending upon the type of judicial function at issue, against [2] the interests sought to be protected by sealing."[27]

First, the unfreezing of Orion's JPM Accounts is wholly peripheral to the claims and defenses asserted by the parties in the action, so the presumption of public access is weak.[28] Second, confidential information bearing on the sensitive financial and business interests of innocent non-parties is not typically filed with the court and is of little value to those monitoring these proceedings.[29] As a non-party, Orion has not been hauled into court, and its confidential documents should not be hauled into the public record as a precondition to vindicating its property rights by moving here to clarify the SRO.[30] Moreover, OCM and OCP have contractual obligations under their respective organizing documents to maintain the confidentiality of all information concerning the business and affairs of the LLC.[31] In the Second Circuit, documents protected by confidentiality agreements are routinely ordered filed under seal.[32] Not only would Orion's confidential financial information ordinarily be protected from disclosure,[33] but the risk of litigation and harm to other members of OCP precipitated by

---

[27] *Encyclopedia Brown Prod's., LTD. v. Home Box Office, Inc.*, 26 F. Supp. 2d 606, 610-11 (S.D.N.Y. 1998) (citing *Amodeo*, 71 F.3d at 1047–1051).

[28] *Id.*; *see also Amodeo*, 71 F.3d at 1050–51; *Std. Inv. Chtd., Inc. v. NASD*, No. 07-2014(SWK) 2008 WL 199537, *8 (S.D.N.Y. Jan. 22, 2008).

[29] *See Amodeo*, 71 F.3d at 1049–50.

[30] *See Amodeo*, 71 F.3d at 1050–52.

[31] *See* Rup Decl. ¶8, Ex. A, OCM LLC Agreement, Section 9.02; *see also* Rup Decl. ¶25, Ex. B, Sirius LLC Agreement, Section 9.02.

[32] *See, e.g., DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 826-27 (2d Cir. 1997); *Liberty Re (Bermuda) Ltd. v. Transamerica Occidental Life Ins. Co.*, No. 04-5044(NRB), 2005 WL 1216292, at *6 (S.D.N.Y. May 23, 2005) (same); *Bergen Brunswig Corp. v. IVAX Corp.*, No. 97-2003(PKL), 1998 WL 113976, at *3 & *6 (S.D.N.Y. Mar. 12, 1998) (same).

[33] *See Amodeo*, 71 F.3d at 1051.

breaching a specific contractual obligation to maintain the confidentiality of the LLC's business information and company affairs suffices to present a clearly defined, specific and serious injury.[34] Therefore, Orion respectfully requests that any documents to be submitted to the Court in support of this motion be ordered filed under seal.

## CONCLUSION

For the foregoing reasons, Movant-Intervenors respectfully request an order:

      a.     granting Movant-Intervenors' motion to intervene in the above-captioned actions;

      b.     clarifying the Statutory Restraining Order by so ordering that J.P. Morgan shall not freeze or encumber any of OCM's or OCP's accounts;

      c.     ordering that whatever supporting documents the Court might wish to consider shall be filed under seal;

      d.     for such other and further relief as this Court may deem just and proper.

Dated: New York, New York
      May 1̸8, 2009

                    Respectfully submitted,

                    GIBSON, DUNN & CRUTCHER, LLP

                    By: _____
                       Lawrence J. Zweifach (LZ-8641)
                       David J. Kerstein (DK-7017)
                       200 Park Avenue
                       New York, New York 10166
                       (212) 351-4000

                    *Attorneys for Orion Capital Management L.L.C. and Orion Constellation Partners L.L.C.*

---

[34] *See Std. Inv. Chtd.*, 2008 WL 199537, at *8; *Encyclopedia Brown*, 26 F. Supp. 2d at 614.