```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -     ECF Case
COMMODITY FUTURES TRADING        :
COMMISSION,
                                 :
              Plaintiff,            GOVERNMENT'S MEMORANDUM
                                 :  OF LAW IN SUPPORT OF
          -against-                 APPLICATION TO
                                 :  INTERVENE AND FOR A
STEPHEN WALSH, PAUL GREENWOOD,      STAY OF DISCOVERY
WESTRIDGE CAPITAL MANAGEMENT,     :
INC., WG TRADING INVESTORS, L.P.,
AND WGIA, LLC,                    :  No. 09 Civ. 1749 (GBD)

              Defendants,         :

          and                     :

WESTRIDGE CAPITAL MANAGEMENT      :
ENHANCEMENT FUNDS, INC., WG
TRADING COMPANY, L.P., WGI LLC,   :
K&L INVESTMENTS, and JANET WALSH,
                                 :
          Relief Defendants.
- - - - - - - - - - - - - - - - - :
SECURITIES AND EXCHANGE
COMMISSION,                       :

              Plaintiff,          :

          -against-               :
                                     No. 09 Civ. 1750 (GBD)
WG TRADING INVESTORS, LP, WG      :
TRADING COMPANY, LIMITED
PARTNERSHIP, WESTRIDGE CAPITAL    :
MANAGEMENT, INC., PAUL GREENWOOD,
and STEPHEN WALSH,                :

              Defendants,         :

          and                     :

ROBIN GREENWOOD and JANET WALSH,  :

          Relief Defendants.      :
- - - - - - - - - - - - - - - - - -
                                     x
```

**GOVERNMENT'S MEMORANDUM OF LAW IN SUPPORT OF APPLICATION TO INTERVENE AND FOR A STAY OF DISCOVERY**

## PRELIMINARY STATEMENT

The United States of America, by and through the United States Attorney for the Southern District of New York ("the Government"), respectfully submits this memorandum in support of its application (i) to intervene in the above-captioned cases, pursuant to Rule 24(a) and (b) of the Federal Rules of Civil Procedure, and (ii) to stay discovery until the parallel criminal case, <u>United States</u> v. <u>Paul Greenwood and Stephen Walsh</u>, 09 Cr. 722 (MGC), is completed. The Securities and Exchange Commission ("SEC") and Commodity Futures Trading Commission ("CFTC") take no position as to this motion. The Court-appointed Receiver overseeing the various defendants and relief defendants, Robb Evans & Associates LLC (the "Receiver"), also takes no position as to the motion. Likewise, defendants Paul Greenwood ("Greenwood") and Stephen Walsh ("Walsh") also take no position as to the instant motion.

## BACKGROUND

On February 25, 2009, Greenwood and Walsh were arrested pursuant to a criminal complaint charging them with conspiracy to commit securities and wire fraud, securities fraud, and wire fraud. On July 24, 2009, a Grand Jury in the Southern District of New York returned Indictment 09 Cr. 722 (MGC) (the "Indictment") charging Greenwood and Walsh with: (1) conspiracy

to commit securities fraud and wire fraud, in violation of Title 18, United States Code, Section 371; (2) securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, Title 17, Code of Federal Regulations, Section 240.10b-5, and Title 18, United States Code, Section 2; (3) commodities fraud, in violation of Title 7, United States Code, Sections 6o(1) and 13(a)(2) and (5), and Title 18, United States Code, Section 2; (4) two counts of wire fraud, in violation of Title 18, United States Code, Sections 1343 and 2; and (5) money laundering, in violation of Title 18, United States Code, Sections 1957 and 2. Finally, the Indictment seeks forfeiture of all property that constitutes or is derived from proceeds of the securities fraud, wire fraud, and money laundering offenses.

Specifically, the Indictment alleges that from at least 1996 through February 2009, Greenwood and Walsh ran a fraudulent commodities trading and investment advisory scheme in which Greenwood and solicited funds under false pretenses, failed to invest investors' funds as promised, and misappropriated and converted investors' funds to the personal benefit of Greenwood, Walsh, and others, without the knowledge or authorization of the investors. Greenwood and Walsh solicited investor funds on the understanding that they would invest the funds in a program called "enhanced stock indexing," which they represented was a conservative trading strategy that had outperformed the results of the S&P 500 Index for more than 10 years. As a result,

several institutional investors – including charitable and
university foundations, retirement and pension plans, and other
institutions – invested more than $7.6 billion.  Investors either
became limited partners in a broker dealer controlled by Walsh
and Greenwood, WG Trading Company, L.P. ("WG Trading Company"),
or received promissory notes issued by an unregistered entity
controlled by Walsh and Greenwood, WG Trading Investors, L.P.
("WG Trading Investors"), which was itself a limited partner in
WG Trading Company.  The notes purported to pay interest at a
rate equal to the investment returns earned by a limited partner
of WG Trading Company.

As charged in the Indictment, contrary to their
representations to their investors, Greenwood and Walsh
misappropriated at least $131 million in investor funds.  Among
other things, Greenwood used the funds to engage in massive
construction in his home, purchase expensive collectible items,
operate a horse farm, and for other personal expenditures.  Walsh
used investor funds for himself and to make large cash payments
to his ex-wife, relief defendant Janet (Walsh) Schaberg.
Greenwood and Walsh also diverted investor funds to satisfy
obligations on investments that were unrelated to the "enhanced
stock indexing" trading business.

Both Greenwood and Walsh executed promissory notes in
favor of WG Investors with respect to the investor funds they
misappropriated and to conceal trading losses, among other

things.  These promissory notes totaled approximately $554 million: approximately $293 million for Greenwood and approximately $261 million for Walsh.

The Honorable Miriam Goldman Cedarbaum is presiding over the criminal case against Greenwood and Walsh.  At the arraignment and initial conference on July 31, 2009, the Court ordered the Government to produce discovery by the end of September, 2009, and scheduled a Pre-Trial Conference for October 6, 2009, at 10:00 a.m.

The same day that Greenwood and Walsh were arrested, February 25, 2009, the CFTC filed the complaint in Case No. 09 Civ. 1749 (GBD)("CFTC Case"), and the SEC filed the complaint in Case No. 09 Civ. 1750 (GBD)("SEC Case").  Both complaints are based upon the same fraudulent conduct of Greenwood and Walsh that is charged in the Indictment, namely the solicitation of investor funds through false representations as to the strategy that the defendants claimed that they would follow in investing the funds, and the misappropriation of massive amounts of investor funds.  On February 25, 2009, this Court granted motions by the CFTC and the SEC, respectively, for emergency preliminary relief, including, among other things, entry of temporary restraining orders ("TRO"), asset freezes, and appointment of the Receiver to oversee the affairs of WG Trading Company, WG Trading Investors, and other related entities.  On May 22, 2009, this Court entered orders granting preliminary injunctions in each

case, and continuing the February 25, 2009 TROs and the appointment of the Receiver.

Pursuant to its mandate, the Receiver has, among other things, taken measures to locate, collect, secure, and index all of the books and records of the defendants regarding the various investments and investors. According to the Receiver, these books and records include both electronic documents, as well as approximately 250 boxes of hard copy documents concerning the defendants' various business operations, investments, investors, and financial transactions. These boxes are currently stored in a secure location in the Receiver's main office in Sun Valley, California.

On June 30, 2009, the Receiver filed motions in each case which, in substance, requested that the Court approve various procedures relating to the filing of claims by investors, the verification and confirmation of those claims, and the administration of such claims. In response to these motions, several investors filed responses in which they each requested, in substance, that the Court order the Receiver to make available all of the documents in the Receiver's possession relating to the defendants and relief defendants. The Receiver has filed responses to objecting to these requests for discovery.

<u>**ARGUMENT**</u>

This Court should stay discovery in this case for several reasons. First, compliance with civil discovery requests

would severely prejudice the pending criminal case against the defendants. Federal law provides for much narrower discovery in a criminal case than in a civil case. Indeed, Federal Rule of Criminal Procedure 16 as well as the Jenks Act, Title 18, United States Code, Section 3500, limit the documents that are subject to criminal discovery and limit access to witness statements. Second, the documents in the Receiver's possession contain evidence that is relevant and material to the Government's investigation and prosecution of Greenwood and Walsh. Those documents contain evidence of criminal conduct by Walsh and Greenwood, and will be used by the United States Attorney's Office in its investigation and prosecution of Walsh, Greenwood, and possibly others. Accordingly, the Government has an interest in ensuring that they are safely and securely handled so that documents are preserved and a chain of custody is maintained. Allowing third parties access to these documents presents an unacceptable risk that documents will be misplaced, altered, or destroyed. Third, staying discovery in this case will protect the Fifth Amendment rights against self-incrimination of both the defendants and other witnesses who may have criminal exposure. Fourth, the Government only proposes a stay of limited duration -- until resolution of the criminal case -- and therefore the proposed stay will neither prejudice the rights of any party to this action nor unduly delay its determination. To the extent that the various groups of investors intend to litigate the

division of assets available for distribution to victims, there
will be ample opportunity for the investors to do so at the
conclusion of the criminal case.  Finally, staying civil
discovery until resolution of the criminal case is more efficient
and preserves this Court's resources because many of the issues
presented by this civil case may well be resolved by the criminal
case.

## I.  INTERVENTION IS APPROPRIATE UNDER FEDERAL RULE OF CIVIL PROCEDURE 24

Under Rule 24(a)(2) of the Federal Rules of Civil
Procedure, anyone may intervene as of right in an action when the
applicant "claims an interest relating to the property or
transaction which is the subject of the action" and the applicant
is so situated that "disposition of the action may as a practical
matter impair or impede the applicant's ability to protect that
interest. . . ."  Alternatively, intervention may be permitted by
the Court under Rule 24(b)(2) of the Federal Rules of Civil
Procedure "when the applicant's claim or defense and the main
action have a question of law or fact in common."  The Government
submits that intervention is appropriate in this action under
both of these provisions.

The Government has a direct and substantial interest in
the subject matter of this litigation, which substantially
parallels the facts that the Government is prosecuting.
Specifically, the Government has a "discernible interest in
intervening in order to prevent discovery in a civil case from

being used to circumvent the more limited scope of discovery in the criminal matter." SEC v. Chestman, 861 F.2d 49, 50 (2d Cir. 1988). In SEC v. Chestman, 861 F.2d 49, the Second Circuit held that the District Court had not abused its discretion in permitting intervention by the Government under either Rule 24(a) or (b).

The Government's interest in upholding the public interest in enforcement of the criminal laws cannot be protected adequately by the existing parties in this civil litigation. The existing parties cannot represent the Government's interests with respect to the investigation and enforcement of federal criminal statutes. See Bureerong v. Uvawas, 167 F.R.D. 83 (C.D.Cal. 1996) ("the Government's prosecutorial and investigative interest is not adequately protected by any of the civil parties . . . . Clearly neither the plaintiff or the defendants have this identical interest.").

As a general rule, courts "have allowed the government to intervene in civil actions -- especially when the government wishes to do so for the limited purpose of moving to stay discovery." Twenty First Century Corp. v. LaBianca, 801 F. Supp. 1007 (E.D.N.Y. 1992). See SEC v. Downe, 1993 W.L. 22126 at 10 (S.D.N.Y. Jan. 26, 1993); Kaiser v. Stewart, Civ. A. 96-6643, 1997 WL 66186 (E.D. Pa. Feb. 6, 1997) (granting intervention); Thornhill v. Otto Candies, Inc., Civ. A. No. 94-1479, 1994 WL 382655 (E.D. La. July 19, 1994) (granting intervention under Rule

24).  Further, the Third Circuit has noted that "[i]t is well established that the United States Attorney may intervene in a federal civil action to seek a stay of discovery when there is a parallel criminal proceeding, which is ... already underway that involves common questions of law or fact."  <u>United States</u> v. <u>Mellon Bank</u>, 545 F.2d 869 (3d Cir. 1976); <u>See also</u> <u>Governor of the Fed'l Reserve System</u> v. <u>Pharaon</u>, 140 F.R.D. 634, 638 (S.D.N.Y. 1991); <u>First Merchants Enterprise, Inc</u>. v. <u>Shannon</u>, 1989 W.L. 25214 (S.D.N.Y. Mar. 16, 1989).

Because civil discovery may, as a practical matter, impair or impede the Government's ability to protect its interests in the enforcement of federal criminal law, the Government respectfully submits that its application to intervene should be granted.

## II.  A STAY OF DISCOVERY IS APPROPRIATE

It is well-established that this Court has the power to stay the civil proceeding pending the outcome of the criminal case.  <u>Kashi</u> v. <u>Gratsos</u>, 790 F.2d 1050, 1058 (2d Cir. 1986) ("[A] court may decide in its discretion to stay civil proceedings . . . when the interests of justice seem . . . to require such action.") (<u>quoting</u> <u>SEC</u> v. <u>Dresser Indus.</u>, 628 F.2d 1368, 1372 (D.C. Cir. 1980)) (internal quotations omitted).  To determine whether a stay is appropriate, courts consider the following factors:

> (1) the extent to which the issues in the criminal case overlap with those presented in the civil case; (2) the

status of the case, including whether the defendant has been indicted; (3) the private interests of the plaintiff in proceeding expeditiously, weighed against the prejudice to plaintiff caused by the delay; (4) the private interests of and burden on the defendant; (5) the public interest; and (6) the interest of the Court in the efficient management of cases.

Parker v. Dawson, No. 06-cv-6191, 2007 WL 2462677 at *3 (Aug. 27, 2007 E.D.N.Y.), citing JHW Greentree, 2005 WL 1705244, at *1 (quoting S.E.C. v. Treadway, No. 04 Civ. 3464(VM)(JCF), 2005 WL 713826, at *2-*3 (S.D.N.Y. March 30, 2005)).  All of the other factors either weigh in favor of, or are neutral as to, staying discovery in this case.

## A.    **The Extent of Overlap**

The nearly identical issues underlying the criminal and civil cases weighs heavily in favor of a stay.  "The most important factor at the threshold is the degree to which the civil issues overlap with the criminal issues."  Volmar Distrib., Inc. v. New York Post Co., Inc., 152 F.R.D. 36, 39 (S.D.N.Y. 1993), citing Judge Milton Pollack, Parallel Civil and Criminal Proceedings, 129 F.R.D. 201, 203 (S.D.N.Y. 1989);  see also Parker v. Dawson, 2007 WL 2462677 (Aug. 27, 2007 E.D.N.Y.) at *4 (same); United States v. One 1964 Cadillac Coupe DeVille, 41 F.R.D. 352, 353 (S.D.N.Y. 1966) ("where both civil and criminal proceedings arise out of the same or related transactions the government is ordinarily entitled to a stay of all discovery in the civil case until disposition of the criminal matter").  Where the civil and criminal proceedings involve the same matter,

"[t]he noncriminal proceeding, if not deferred, might undermine the party's Fifth Amendment privilege against self-incrimination, expand rights of criminal discovery beyond the limits of Federal Rule of Criminal Procedure 16(b), expose the basis of the defense to the prosecution in advance of criminal trial, or otherwise prejudice the case." Dresser Indus., 628 F.2d at 1375.

If civil discovery proceeds, the defendants, and witnesses with potential criminal exposure, may be deposed and therefore put at risk of incriminating themselves. If the defendants or witnesses assert their Fifth Amendment privilege, an adverse inference may be drawn against them in the civil case. See Baxter v. Palmigiano, 425 U.S. 308, 318 (1976) (Fifth Amendment does not forbid adverse inferences against parties to civil actions). Moreover, as one district court has recently noted, "[t]he specter of parties and witnesses invoking their Fifth Amendment rights would render discovery largely one-sided; the SEC would produce scores of documents and witness testimony only to be precluded from gathering reciprocal discovery from the defendants." SEC v. Nicholas, 569 F.Supp.2d. 1065, 1070 (C.D.Cal. 2008).

In addition, the Government, the Court and the public have an important interest in insuring that civil discovery is not used to circumvent the restrictions that pertain to criminal discovery. The reasons for the policy against conducting civil discovery while criminal proceedings are open stem directly from

the differences between civil and criminal proceedings.  As Judge

Wisdom explained in Campbell v. Eastland, 307 F.2d 478 (5th Cir.

1962),

> The very fact that there is a clear distinction between
> civil and criminal actions requires a government policy
> determination of priority:  which case should be tried
> first.  Administrative policy gives priority to the
> public interest in law enforcement.  This seems so
> necessary and wise that a trial judge should give
> substantial weight to it in balancing the policy
> against the right of a civil litigant to a reasonably
> prompt determination of his civil claims or
> liabilities.

Id. at 487.  Indeed, the courts have repeatedly recognized the

priority that should be given to the "public interest in law

enforcement."  United States v. Hugo Key & Son, Inc., 672 F.

Supp. 656, 685 (D.R.I. 1987); see also Driver v. Helms, 402 F.

Supp. 683, 685 (D.R.I. 1975); In re Ivan F. Boesky Securities

Litig., 128 F.R.D. 47, 49 (S.D.N.Y. 1989)("the public interest in

the criminal case is entitled to precedence over the civil

litigant").

Courts repeatedly have recognized that a civil litigant

should not be allowed to use civil discovery to avoid the

restrictions that would otherwise pertain in criminal discovery

to a criminal defendant.  SEC v. Beacon Hill Asset Management

LLC, No. 02 Civ. 8855 (LAK), 2003 WL 554618, at *1  (S.D.N.Y.

Feb. 27, 2003) (in context of request for civil stay of discovery

due to pending criminal investigation, "the principal concern

with respect to prejudicing the government's criminal

investigation is that its targets might abuse civil discovery to

circumvent limitations on discovery in criminal cases") (Kaplan, J.); see, e.g., SEC v. Downe, 1993 WL 22126 at *12-13; Governor of the Fed'l Reserve System v. Pharaon, 140 F.R.D. 634, 639 (S.D.N.Y. 1991) ("A litigant should not be allowed to make use of the liberal discovery procedures applicable to a civil suit as a dodge to avoid the restrictions on criminal discovery") (citations omitted).

> It is well established that a litigant should not be allowed to make use of the liberal discovery procedures applicable to a civil suit to avoid the restrictions on criminal discovery and, thereby, obtain documents [and testimony] he might otherwise not be entitled to for use in his criminal suit.

Founding Church of Scientology v. Kelley, 77 F.R.D. 378, 380 (D.C. Cir. 1977); see also Campbell v. Eastland, 307 F.2d 478 (litigants may not use civil discovery "as a dodge to avoid the restrictions in criminal discovery").  Another court has stated: "This abusive tactic is an improper circumvention of the restrictions of the criminal discovery rules.  Protection of the integrity of the criminal justice process fully justifies this Court's taking remedial action."  United States v. Phillips, 580 F. Supp. 517, 520 (N.D. Ill. 1984) (granting stay of discovery until conclusion of criminal trial).

Rule 16 of the Federal Rules of Criminal Procedure expressly limits the documents that are subject to discovery in a criminal case and further states that it does not "authorize the discovery . . . of statements made by government witnesses or prospective government witnesses except as provided in 18 U.S.C.

14

§ 3500." Fed. R. Crim. P. 16(a)(2). Title 18, United States Code, Section 3500 provides that in criminal cases, the statements of Government witnesses -- such as witness testimony taken by the SEC -- shall not be "the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case."

The public policy against premature disclosure of the Government's criminal case is so strong that courts are without power to order early production of witness statements. <u>See</u> <u>United States</u> v. <u>Taylor</u>, 802 F.2d 1108, 1117-18 (9th Cir. 1986). Moreover, except under "exceptional circumstances" and pursuant to court order, the criminal rules do not provide either for depositions as a means of discovery or for any discovery of third parties." <u>See</u> <u>In re Ahead By A Length, Inc.</u>, 78 B.R. 708, 711 (S.D.N.Y. 1987); Fed. R. Crim. P. 15 & 16.

Traditionally, the narrow scope of federal criminal discovery, unlike the broad scope of civil discovery, has been justified by three considerations of particular concern in a criminal proceeding: (1) the fear that broad disclosure of the essentials of the prosecution's case will result in perjury and manufactured evidence; (2) the fear that revelation of the identity of prospective Government witnesses will create the opportunity for intimidation of those witnesses, thereby discouraging the giving of information to the Government; and (3) the fear that criminal defendants will unfairly surprise the

prosecution at trial with information gained through discovery, while the self-incrimination privilege would effectively block any attempts by the Government to discover relevant evidence from the defendants. Campbell v. Eastland, 307 F.2d at 487 n.12; Nakash v. U.S. Dep't of Justice, 708 F. Supp. 1354, 1365-66 (S.D.N.Y. 1988); Founding Church of Scientology v. Kelley, 77 F.R.D. 378, 381 (D.D.C. 1977).

In recognition of these distinctions and interests, courts have repeatedly stayed civil discovery and adjourned civil trials where a criminal proceeding is pending, both in order to prevent the civil discovery rules from being subverted into a device for improperly obtaining discovery in the criminal proceedings and to assure that the Government's ability to prosecute the criminal case is not undermined. This is particularly so where, as here, the pending criminal proceeding involves virtually the same issues, evidence, and witnesses as the civil proceeding.

This case presents an added concern because third parties are seeking access to documents and material that are relevant and necessary to the prosecution of a criminal case. The Government recognizes that the investors have a substantial interest in the accuracy and fairness of the Receiver's proposed claims verification and asset distribution procedures. However, the Government is concerned that allowing these parties access at this time to the large quantity of documents that the Receiver

has gathered will present an unacceptable risk that documents will become lost, destroyed, or that there will be a break in the chain of custody, a circumstance which will materially hinder the criminal prosecution. Moreover, the Government is concerned that some parties may well seek to take depositions of persons who are potential witnesses in the criminal case, some of whom may have (or may believe they have) criminal exposure. Any efforts to take depositions of potential Government witnesses runs the risk that Greenwood and Walsh will obtain free discovery of witness statements or that the witness will assert their Fifth Amendment rights.

Moreover, the Government is requesting a limited stay that will only last until the criminal case is resolved. After the criminal case is resolved, the investors will have ample opportunity able to litigate their various interests in the assets marshaled by the Receiver. Thus, the prejudice to the investors is limited.

**B.    The Status of the Case**

The return of an Indictment in the criminal case is also a factor that weighs in favor of a stay. "Courts generally decline to stay civil proceedings when a related criminal matter is still in the investigatory stage." <u>Treadway</u>, 2005 WL 713826 at *3. On the other hand, "[t]he weight of authority in this Circuit indicates that courts will stay a civil proceeding when the criminal investigation has ripened into an indictment." <u>In</u>

17

re Par Pharm, Inc. Sec. Litig., 133 F.R.D. 12, 13 (S.D.N.Y. 1990).

As Judge Chin explained in Trustees of Plumbers and Pipefitters Nat'l Pension Fund, et al. v. Transworld Mechanical, Inc.:

> A stay of a civil case is most appropriate when a party to the civil case has already been indicted for the same conduct for two reasons: first, the likelihood that a defendant may make incriminating statements is greatest after an indictment has issued, and second, the prejudice to the plaintiffs in the civil case is reduced since the criminal case will likely be quickly resolved.

Trustees, 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995). Here, both defendants in the civil case have been charged in an Indictment issued by a grand jury in this District, a factor weighing in favor of a stay of discovery.

## C.    **The Interests of the Plaintiff**

The government has spoken with counsel for the SEC and the CFTC, who have advised us that the SEC and the CFTC take no position as to the instant motion. The Receiver also has advised the Government that it takes no position as to the instant motion. This factor therefore is neutral as to the potential stay.

## D.    **The Interests of the Defendants**

Defendants Greenwood and Walsh likewise take no position as to the instant motion. This factor therefore is neutral as to the potential stay.

**E.  The Public Interest and the Interests of the Court in Efficient Management**

Considerations of judicial economy and the public interest in efficient use of judicial resources weigh heavily in favor of granting a stay.  Issues common to both cases can be resolved in the criminal proceeding, thereby simplifying the civil action.  This, in turn, may significantly pare down the number of issues to be determined in the civil case.  See United States v. Mellon Bank, N.A., 545 F.2d 869, 873 (3d Cir. 1976) ("resolution of the criminal case may moot, clarify, or otherwise affect various contentions in the civil case"); Twenty First Century Corp. v. LaBianca, 801 F. Supp. 1007 (recognizing judicial economy as a factor to be considered); Brock v. Tolkow, 109 F.R.D. 116, 120 (E.D.N.Y. 1985) (noting that resolution of the criminal case "might reduce scope of discovery in the civil case and otherwise simplify the issues").

> There is an unnamed party in every lawsuit -- the public.  Public resources are squandered if judicial proceedings are allowed to proliferate beyond reasonable bounds.  The public's right to a 'just, speedy, inexpensive determination of every action'... is infringed, if a court allows a case. . . to preempt more than its reasonable share of the Court's time.

United States v. Reaves, 636 F. Supp. 1575, 1578 (E.D.Ky. 1986) (citations omitted).

Weighing the disparate factors above, one district court recently concluded that a stay of the entire civil case was appropriate.  In SEC v. Nicholas, 569 F.Supp. 2d 1065 (C.D.Cal. 2008), a court in the Central District of California was

presiding over an SEC civil enforcement action against four
former Broadcom executives who were alleged to have participated
in a five-year scheme to backdate stock options.  The United
States Attorney's Office ("USAO") in that district brought a
criminal case against two of the same executives.  The USAO moved
to intervene and to stay discovery and other proceedings in the
civil case with respect to the two criminally charged defendants.
The defendants opposed the stay.  The Court noted that parallel
proceedings would implicate the Fifth Amendment rights of the
parties and witnesses, Nicholas at 1069, and consequently would
render civil discovery "largely one-sided; the SEC would produce
scores of documents and witness testimony only to be precluded
from gathering reciprocal discovery from the Defendants."  Id. at
1070.  The court recognized the important policy considerations
underlying limited criminal discovery, and the necessity of
preserving the integrity of the criminal case.  Id. at 1071-72
(criminal discovery rules "prevent perjury and manufactured
evidence, . . . protect potential witnesses from harassment and
intimidation, and . . . level the playing field between
Government and the defendant, who would be shielded from certain
discovery by the Fifth Amendment.")  The court also wrote that
"[g]iven the high degree of overlap and interrelatedness of the
cases, dual litigation [would] not serve the interests of
efficiency or judicial economy," particularly where "collateral
estoppel in the criminal case may expedite the resolution of the

criminal case." <u>Id</u>.  Finally, the Court noted that "[t]he criminal case is of primary importance to the public, the Defendants, and the Court," citing "the public interest in the integrity of public markets, efficient punishment of wrongdoers, and deterrence of similar conduct by other corporate officers." Having weighed all of these factors against the defendants' opposition to a stay of discovery, the Court permitted the USAO to intervene and granted a complete stay of the civil case.  <u>Id</u>. at 1072.

## CONCLUSION

In sum, all of the factors set forth above weigh in favor of, or are neutral as to, a stay of discovery in this matter.  Staying discovery will prevent the defendants from circumventing the restrictions on criminal discovery.  It will protect the Fifth Amendment rights of both the defendants and those witnesses with criminal exposure.  Limiting the access to the documents in the Receiver's possession, at this stage in the case, will aid in the maintenance and preservation of the documentary evidence.  Finally, it will preserve the resources of the Court and serve the public interest, by narrowing the issues and simplifying the civil proceeding.  For those reasons, the

Government respectfully requests that this Court grant its application to intervene and to stay discovery pending completion of the criminal case.

Dated:     New York, New York
           July 31, 2009

                              Respectfully submitted,

                              LEV L. DASSIN
                              Acting United States Attorney
                              Southern District of New York
                              Attorney for the United States
                              of America

                    By:  /s/ John J. O'Donnell
                         John J. O'Donnell
                         Assistant United States Attorney
                         Telephone:  (212) 637-2490