```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------ x
COMMODITY FUTURES TRADING            :
COMMISSION,                          :
                    Plaintiff,       :
                                     :
        -against-                    :
                                     :
STEPHEN WALSH, PAUL GREENWOOD,       :
WESTRIDGE CAPITAL MANAGEMENT, INC.,  :
WG TRADING INVESTORS, L.P., WGIA, LLC:
                                     :
                    Defendants,      :
        -and-                        :
                                     :
WESTRIDGE CAPITAL MANAGEMENT         :
ENHANCEMENT FUNDS INC, WG TRADING    :
COMPANY, LP, WGI LLC, K&L            :
INVESTMENTS, and JANET WALSH,        :
                                     :
                Relief Defendants.   :
                                     :
SECURITIES AND EXCHANGE COMMISSION,  :
                                     :
                    Plaintiff,       :
                                     :
        -against-                    :
                                     :
WG TRADING INVESTORS, L.P., WG       :
TRADING COMPANY, LIMITED             :
PARTNERSHIP, WESTRIDGE CAPITAL       :
MANAGEMENT, INC., PAUL GREENWOOD     :
and STEPHEN WALSH,                   :
                    Defendants,      :
                                     :
        -and-                        :
                                     :
ROBIN GREENWOOD AND JANET WALSH      :
                                     :
                Relief Defendants.   :
                                     :
------------------------------------ x
```

Memorandum Opinion
and Order

09 CV 1749 (GBD)

09 CV 1750 (GBD)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 0 9 MAR 2010

```
------------------------------------ x
                                     :
UNITED STATE OF AMERICA,             :
                                     :
              -against-              :          09 CR 722 (MGC)
                                     :
PAUL GREENWOOD, AND STEPHEN WALSH,   :
                                     :
              Defendants.            :
                                     :
                                     :
------------------------------------ x
```

Appearances:

Frederick P. Hafetz
Tracy E. Sivitz
*Attorneys for Defendant Paul Greenwood*

Glenn C. Colton
Mark A. Flessner
*Attorneys for Defendant Stephen Walsh*

John J. O'Donnell Jr.
Marissa Mole
*Assistant United States Attorneys*

GEORGE B. DANIELS and MIRIAM GOLDMAN CEDARBAUM,
United States District Judges:

On February 24, 2009, the United States Attorney's Office filed a criminal complaint against Defendants Stephen Walsh and Paul Greenwood charging them with conspiracy, securities fraud, and wire fraud.[1] One day later, on February 25, 2009, the Commodity Futures Trading Commission ("CFTC") and the Securities and Exchange Commission ("SEC") filed

---

[1] See United State of America v. Paul Greenwood and Stephen Walsh, 09 cr 722 (MGC).

civil actions against Defendants Greenwood, Walsh, and other entities, alleging essentially the same fraudulent conduct from 1996 to February 2009.[2] At that time, Judge Daniels issued a restraining order freezing the assets of all of the defendants, including Greenwood and Walsh.

On November 25, 2009, Greenwood filed a motion in the criminal case requesting that the court allow him to pay attorneys' fees with $1 million worth of certain frozen assets, which he claimed were purchased before the commencement of the criminal conduct charged against him. Greenwood alleges that antiques appraised at $1,127,725 and Steiff collectibles valued at $659,946, that were purchased before 1996, are untainted assets and should be unfrozen and used to pay attorneys' fees.

On December 22, 2009, Walsh filed a similar motion. Walsh alleges that his residence at 7 Half Moon Lane, Sands Point, New York, was purchased in 1999 with proceeds from the sale of another property which he purchased prior to the time period of the alleged fraud. Walsh alleges that he and his wife purchased the original property located at 38 Arden Lane, Sands Point, New York in 1983 for $900,000. In 1999, the Walshes sold 38 Arden Lane for approximately $4,500,000 and used $3,150,000 to purchase 7 Half Moon Lane in cash. The home at 7 Half Moon Lane is owned individually by Defendant Walsh as a result of their divorce settlement. In 2007, a real estate broker for Sands Point represented that 7 Half Moon Lane could sell for between $7,000,000 and $10,000,000. On February 4, 2010, Defendants' motions were argued before Judge Daniels and Judge Cedarbaum.

---

[2] See Commodity Futures Trading Commission v. Stephen Walsh, et. al., 09 cv 1749 (GBD); Securities and Exchange Commission V. WG Trading Investors, L.P., 09 cv 1750 (GBD).

The motions of Defendants Walsh and Greenwood are granted to the extent that Greenwood's collectibles and Walsh's home at 7 Half Moon Lane may be sold, and Defendants may utilize a portion of the proceeds of the sales to pay for the lawyers of their choice with untainted funds. A hearing will be scheduled for Wednesday, April 21, 2010 at 10:00am, in Courtroom 14A, at which the Government will have the opportunity to present evidence of probable cause to believe that the funds sought for attorneys' fees are tainted and, if contested by the Defendants, probable cause for the criminal charges in the Indictment.

## Legal Standard and Analysis

The Sixth Amendment to the United States Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. The Supreme Court has noted that "an element of [the Sixth Amendment] right is the right of a defendant who does not require appointed counsel to choose who will represent him." United States v. Gonzalez-Lopez, 548 U.S. 140, 144 (2006). This right, however, has its limits[3] and does not include the use of other people's money to cover a defendant's legal fees. See S.E.C. v. Cherif, 933 F.2d 403, 416-17 (7th Cir.1991) ( "A criminal defendant has 'no Sixth Amendment right to spend another person's money for services rendered by an attorney.'").

In the present case, Defendants Greenwood and Walsh argue that the Sixth Amendment

---

[3] See Morris v. Slappy, 461 U.S. 1, 13-14 (1983) ("The essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers."); United States v. Cronic, 466 U.S. 648, 657, n. 21 (1984) ("[T]he appropriate inquiry focuses on the adversarial process, not on the accused's relationship with his lawyer as such.").

4

guarantees them the right to counsel of their choice, and that the law permits them to use untainted funds to pay their legal fees and costs. Relying primarily on United States v. Monsanto, 924 F.2d 1186, 1203 (2d Cir.) and S.E.C. v. Coates, No. 94 Civ. 5361 (KMW), 1994 WL 455558 (S.D.N.Y. Aug. 23, 1994), Walsh argues that this court should schedule a hearing at which the Government would be required to demonstrate probable cause that Walsh committed the crimes charged and that the purchase of his home at 7 Half Moon Lane is traceable to proceeds of the crimes charged against him.[4] Greenwood argues that no such hearing is required as to his assets since undisputed evidence establishes that his antiques and collectibles were acquired prior to his alleged fraudulent misconduct.

The Government argues that the asset freeze orders do not violate Defendants' Sixth Amendment rights. The Government contends that Defendants' reliance on Monsanto and Coates is misplaced since Monsanto arose in the context of a criminal asset freeze, and other courts in the civil context have refused to release funds when frozen assets were tainted or where they were insufficient for restitution and disgorgement remedies. The Government further contends that Defendants have been accorded the due process contemplated in those decisions.

In Monsanto, the Supreme Court concluded that under the forfeiture statute covering drug cases, "assets in a defendant's possession may be restrained . . . on a finding of probable cause to believe that the assets are forfeitable." Monsanto, 491 U.S., at 615 ( Monsanto III ). On remand, the Second Circuit considered whether the Fifth and Sixth Amendments "require an adversary

---

[4] In other parts of his motion, Walsh claims that the evidence clearly establishes that the home at 7 Half Moon Lane is untainted and untraceable to the alleged fraud.

5

post-restraint, pretrial hearing in order to continue a restraint ordered ex parte." 924 F.2d 1186, 1188 (2d Cir.) ("Monsanto IV"). The Second Circuit concluded that the Fifth and Sixth Amendments dictate that continuation of an order restraining assets otherwise needed to retain counsel, requires an adversary, post-restraint, pretrial hearing as to probable cause that: "(a) the defendant committed crimes that provide a basis for forfeiture, and (b) the properties specified as forfeitable in the indictment are properly forfeitable." United States v. Monsanto, 924 F.2d 1186, 1203 (2d Cir.), cert. denied, 112 S.Ct. 382 (1991).

In Coates, the defendant in a civil suit who was also the subject of a parallel criminal prosecution moved the court to release frozen personal assets in order to retain an attorney. 1994 WL 455558, at *3. Relying on Monsanto, the defendant in Coates urged the court to conduct a plenary hearing at which the SEC would have the burden of proving that the frozen assets can be traced to the defendant's fraudulent activity. Id. The SEC argued that the hearing on the restraining order satisfied any requirements from Monsanto. Id. at 4. In addressing the applicability of the Monsanto cases, the court explained that while those decisions address the propriety of an asset freeze in the context of forfeiture in a drug conspiracy case, many of the reasons cited for a hearing in Monsanto IV seem equally applicable to the propriety of an asset freeze in a civil case affecting a defendant's right to counsel in a parallel criminal case.

In its analysis, the court explained that "[a]lthough a court may impose an asset freeze in a civil case, notwithstanding a companion criminal case, these circumstances dictate that the court pay particular attention to the defendant's Fifth and Sixth Amendment rights." Id. at 3. Finding that the proceedings had "probably not fully satisfied the requirements suggested by Monsanto," the court scheduled a hearing at which the parties would address whether the

6

Government had made out a prima facie case, and to present evidence regarding the extent to which the defendant's personal assets could be traced to the alleged fraud. Id. at 4.

As in Coates, the present action involves asset freeze orders in civil actions, with Defendants also being tried in a parallel criminal proceeding. These unique circumstances require the court to pay particular attention to the Defendants' Fifth and Sixth Amendment rights. The Government has failed to cite any case law which stands for the proposition that a defendant is not entitled to use untainted funds, frozen in a civil action, in order to pay legal fees for his counsel of choice in a parallel criminal action. Moreover, the Government has yet to proffer evidence that demonstrates probable cause to believe that Walsh's home at 7 Half Moon Lane and Greenwood's antiques and collectibles are tainted by the alleged fraud. Since continuation of the freezing orders could hinder Defendants' ability to maintain counsel of choice in the criminal case, a Monsanto type hearing is necessary.

Defendants Walsh and Greenwood's motions are granted to the extent that Defendants are entitled to pay for lawyers of their choice with untainted funds. A probable cause hearing will be scheduled for the Government to demonstrate to what extent, if any, Greenwood's antiques and collectibles, and Walsh's home at 7 Half Moon Lane are tainted. The Government shall indicate by April 5, 2010, the nature of the evidence and the extent to which it plans to demonstrate that the assets in question are tainted. Money shall be available to Greenwood up to the requested amount of $1,000,000, and to Walsh up to $900,000 (the 1983 purchase price of the home at 38 Arden Lane) for payment of reasonable attorneys' fees incurred in the criminal case, if the Government cannot meet its burden of demonstrating that there is probable cause to believe that those funds are tainted by fraud. Invoices for attorneys' fees should be submitted as

7

incurred, and limited to fees and expenses related solely to representation in the criminal action. The Receiver, with the cooperation of Defendants' attorneys, should immediately begin the liquidation process of Greenwood's antiques and collectibles, and Walsh's home at 7 Half Moon Lane.

Dated: New York, New York
      March 9, 2010

SO ORDERED:

*Miriam Goldman Cedarbaum*
MIRIAM GOLDMAN CEDARBAUM
United States District Judge

*George B. Daniels*
GEORGE B. DANIELS
United States District Judge