UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION,<br><br>                Plaintiff,<br><br>  -against-<br><br>STEPHEN WALSH, PAUL GREENWOOD, WESTRIDGE CAPITAL MANAGEMENT, INC., WG TRADING INVESTORS, LP, WGIA, LLC,<br><br>                Defendants,<br><br>WESTRIDGE CAPITAL MANAGEMENT ENHANCEMENT FUNDS INC., WG TRADING COMPANY LP, WGI LLC, K&L INVESTMENTS, AND JANET WALSH,<br><br>                Relief Defendants. | Civil Action No.: 09-CV-1749 (GBD) |
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                Plaintiff,<br><br>  -against-<br><br>WG TRADING INVESTORS, L.P., WG TRADING COMPANY LIMITED PARTNERSHIP, WESTRIDGE CAPITAL MANAGEMENT, INC., PAUL GREENWOOD, and STEPHEN WALSH<br><br>                Defendants,<br><br>ROBIN GREENWOOD and JANET WALSH<br><br>                Relief Defendants. | Civil Action No.: 09-CV-1750 (GBD) |

<u>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT BETWEEN THE RECEIVER AND THE SUN AMERICA PARTIES</u>

1155020.1

Robb Evans & Associates LLC (the "Receiver") respectfully submits its memorandum of points and authorities in support of its motion for approval of a settlement agreement (the "Settlement Agreement") between the Receiver and American General Life Insurance Company, successor-in-interest to SunAmerica Life Insurance Company, and American International Group, Inc. (the "Sun America Parties").

I

INTRODUCTION

The Receiver has been authorized to pursue "clawback" claims to recover amounts paid to investors in excess of the principal amount of their investments. The Receiver believes the Sun America Parties received payments in excess of their investment and commenced an action against the Sun America Parties to recover the excess payments.

The Receiver entered into extensive negotiations with the Sun America Parties to resolve the Receiver's clawback claim. The negotiations resulted in a settlement, subject to Court approval, that provides for the recovery of $41 million for the benefit of the receivership estate, without the expense, delay and risks of protracted litigation. The Receiver respectfully submits that this is an outstanding settlement for the receivership estate and should be approved.

II

FACTUAL AND PROCEDURAL BACKGROUND

A.   *Commencement of the Receivership.*

On February 25, 2009, the Receiver was appointed as the receiver over WG Trading Investors, L.P. ("WGTI"), WG Trading Company, Limited Partnership ("WGTC"), and Westridge Capital Management, Inc. ("Westridge Capital"), and over the assets of Stephen Walsh ("Walsh"), Paul Greenwood ("Greenwood"), Robin Greenwood and Janet Walsh, in the case captioned *Securities and Exchange Commission v. WG Trading Investors, L.P., et al.*, United States District Court, Southern District of New York, Case No. 09-CV-1750 GBD (the "SEC Action"). The Receiver was made permanent receiver in the SEC Action by an order of preliminary injunction dated May 21, 2009. SEC Action Dckt. Nos. 2, 100. *See,* Declaration of

Brick Kane in Support of Motion for Approval of Conditional Settlement Between the Receiver and the Sun America Parties (the "Kane Declaration") filed concurrently herewith, ¶ 3.

On February 25, 2009, the Receiver was also appointed as the receiver over WGTI, Westridge Capital, Greenwood, Walsh, WGIA, LLC ("WGIA"), WGTC, Westridge Capital Management Enhancement Funds, Inc., WGI, LLC, K&L Investments, and over the assets of Janet Walsh, in the case captioned *Commodity Futures Trading Commission v. Stephen Walsh, et al.*, United States District Court, Southern District of New York, Case No. 09-CV-1749 GBD (the "CFTC Action"). The Receiver was made permanent receiver in the CFTC Action by an order of permanent injunction dated May 21, 2009. CFTC Action Dckt. Nos. 2, 108. Kane Declaration, ¶ 4.

The orders appointing the Receiver in the SEC Action and CFTC Action provide, among other things, that the Receiver has full power to take and retain immediate possession and control of all assets and property of WGTC, WGTI and Westridge Capital, and to sue for, collect, receive and take possession of all monies of the defendants and the relief defendants.

B. *The Fraudulent Ponzi Scheme.*

The Receiver filed two reports with the Court setting forth its activities and findings, which demonstrate that WGTI and WGTC (hereinafter referred to collectively as the "Receivership Entities") were financially inseparable and were operated as a unitary Ponzi-type fraudulent enterprise.[1] Kane Declaration, ¶ 6. The Receiver determined that the general partners of the Receivership Entities - - Walsh and Greenwood - - hid their misappropriation of investor funds and losses in connection with an investment in a company known as Signal Apparel

---

[1] The Receiver's first report, entitled Report of Temporary Receiver's Activities February 25, 2009 Through May 22, 2009, is referred to as the "First Report." The First Report is Dckt. No. 102 in the SEC Action and Dckt. No. 110 in the CFTC Action. The Receiver's second report, entitled Report of Receiver's Activities for the Period From May 25, 2009 Through May 28, 2010, is referred to as the "Second Report." The Second Report is Dckt. No. 303 in the SEC Action and Dckt. No. 329 in the CFTC Action.

Company, Inc. ("Signal Apparel") through, among other things, improper "employee advances." Kane Declaration, ¶ 7.

Walsh and Greenwood misappropriated a substantial portion of the investor funds, in excess of $130 million, for their own personal use and to fund their lavish lifestyles. First Report, pp. 13-14. The Receivership Entities lost in excess of $180 million in connection with the investment in Signal Apparel. First Report, pp. 19-24. As a result of, among other things, Walsh and Greenwood's misappropriation of investor funds and their efforts to hide the substantial losses in Signal Apparel, the Receivership Entities did not invest all of the money raised from investors that should have been invested. Kane Declaration, ¶ 7.

The investigations described in the First Report and the Second Report led the Receiver to the inescapable conclusion that the Receivership Entities were in fact a unitary Ponzi-type fraudulent investment enterprise. Over a 13-year period commencing in 1996, the Receivership Entities had net earnings of approximately $331 million, but paid out and promised to pay out earnings to its investors of approximately $982 million, creating a shortfall of approximately $651 million. The money paid out and promised for payment could not have been paid without raising new investor capital. Second Report, pp. 19-20; Kane Declaration, ¶ 8.

Many investors received payments from the Receivership Entities in an aggregate amount less than the amount they invested in the Receivership Entities (the "Losing Investors"). The Receiver made an initial distribution to Losing Investors totaling approximately $792 million on April 21, 2011, pursuant to the Order Granting Motion for Orders Allowing Claims and Approving the Receiver's Proposed Initial Distribution Plan, which was entered on March 21, 2011. The Losing Investors are still owed a collective total of not less than $167 million after the initial distribution. The Receiver subsequently filed a motion seeking approval of a second distribution totaling $40 million (the "Second Distribution") to the Losing Investors, which was granted. That order has been appealed and the funding of the Second Distribution has been stayed by order of the Second Circuit Court of Appeals. Kane Declaration, ¶ 9.
///

C.  *The Clawback Litigation.*

The Receiver identified several investors who received amounts from the Receivership Entities in excess of the amounts invested by such investors in the Receivership Entities. The Receiver contends that amounts received by investors from the Receivership Entities in excess of the amounts invested by such investors in the Receivership Entities are recoverable by the Receiver based on several theories, including without limitation several provisions of the New York fraudulent transfer statutes. The Court issued orders in the SEC Action and the CFTC Action specifically permitting the Receiver to commence litigation on behalf of the receivership estate based on such claims. Kane Declaration, ¶ 10.

The Receiver commenced five lawsuits for recovery of amounts received by certain investors in the Receivership Entities in excess of the amounts invested by such investors, plus interest, attorneys' fees and costs as follows:

(1) *Robb Evans & Associates LLC, etc. v. Sun America Life Insurance, etc., et al.*, United States District Court, Southern District of New York, Case No. 10 CIV 5999 (GBD) (the "Sun America Action"). Defendants in this action are defendants Sun America Life Insurance, American International Group, Inc., Trustees of Tufts College, Sun Life Assurance Company of Canada (U.S.) (subsequently dismissed by court order) and Baptist Healthcare Systems, Inc. (subsequently dismissed pursuant to settlement agreement).

(2) *Robb Evans & Associates LLC, etc. v. State Street Bank and Trust Company, etc., et al.*, United States District Court, Southern District of New York, Case No. 11 CIV 3478 (GBD) (the "Cooper Action"). The defendants in the Cooper Action are State Street (as former trustee of the Cooper Industries, Inc., Master Trust for Defined Benefit Plans) and Cooper. The Cooper Action was subsequently dismissed as to all defendants pursuant to settlement agreement.

(3) *Robb Evans & Associates LLC, etc. v. Intermountain Healthcare, Inc., et al,* United States District Court, Southern District of New York, Case No. 11 CIV 5532 (JBD) (the "Intermountain Action"). The defendants in this action are Intermountain Healthcare, Inc., and

IHC Health Services, Inc.  The Intermountain Action was subsequently dismissed as to all defendants pursuant to settlement agreement.

(4) *Robb Evans & Associates LLC, etc. v. Nebraska Investment Council, etc.,* Supreme Court of the State of New York, County of New York, Index No. 651281/2010 (the "NIC Action").  The defendant in the NIC Action is Nebraska Investment Council.

(5) *Robb Evans & Associates LLC, etc., v. Zephyros Limited, etc., et al.*, United States District Court, Southern District of New York, Case No. 12 CIV 7720 (GBD) (the "Zephyros Action").  The defendants in the Zephyros Action are Zephyros Limited, a private limited company organized and existing under the laws of the United Kingdom, Zephyros Limited, a private limited company organized and existing under the laws of the Cayman Islands, and Credit Suisse International.

These actions, and any other actions the Receiver may elect to file against investors in the Receivership Entities who received amounts in excess of the amounts they invested, are hereinafter collectively referred to as the "Receiver's Actions."  The defendants presently named and who may be later named in the Receiver's Actions are collectively referred to as the "Winning Investors."  Kane Declaration, ¶ 11.

D.    *The Settlement with the Sun America Parties.*

The Receiver contends that the Sun America Parties received $76,519,520 from the Receivership Entities in excess of the amount they invested in the Receivership Entities, not including any payments for fees that may have been made by the Sun America Parties to Westridge Capital.  The Sun America Parties denied many of the material allegations in the Receiver's complaint in the Sun America Action and alleged various defenses to the claims asserted by the Receiver, including defenses that the claims are time barred or have lapsed, that the claims are barred by res judicata and collateral estoppel, and that the Receiver failed to join parties as required by Federal Rule of Civil Procedure 19.  Kane Declaration, ¶ 12.

In the interest of providing a full and complete resolution of the issues raised in the Sun America Action, the Receiver and the Sun America Parties entered into a settlement agreement

(the "Sun America Settlement Agreement"), subject to Court approval, to resolve their claims and defenses. Pursuant to this agreement, the Sun America Parties will pay to the Receiver the sum of $41 million (the "Settlement Payment"). The Settlement Payment represents 53.58% of the Receiver's claim against the Sun America Parties. Kane Declaration, ¶ 13.

III

THE SETTLEMENT IS FAIR AND SHOULD BE APPROVED

    A.    *Standards for Approval and Role of the Court.*

A settlement by a receiver in a federal equity receivership is within the receiver's broad discretion and should be approved if it is fair. *Gordon v. Dadante*, 336 Fed. Appx. 540 (6th Cir. 2009); *Securities and Exchange Commission v. Credit Bancorp, Ltd.*, No. 99 Civ. 11395, 2002 WL 1792053 at *4-5 (S.D.N.Y. August 2, 2002); *Securities and Exchange Commission v. Princeton Economic International, Inc.*, No. 99 Civ. 9667, 2002 WL 206990 at *1 (S.D.N.Y. February 8, 2002). "[R]eceivers benefit from the general presumption that district courts favor settlements." *Sterling v. Stewart*, 158 F.3d 1199, 1202 (11th Cir. 1998).

A district court's determination of the fairness of a settlement by a receiver is subject to the sound discretion of the court and will be overturned only on a clear showing of abuse of discretion. *Gordon v. Dadante*, 336 Fed. Appx. at 545 (holding that district court did not abuse its discretion in approving settlement agreement entered into by a receiver); *Sterling v. Stewart*, 158 F.3d at 1202 (quoting *Bennett v. Behring*, 737 F.2d 982, 986 (11th Cir. 1984)); *Securities and Exchange Commission v. Arkansas Loan and Thrift Corp.*, 427 F.2d 1171, 1172 (8th Cir. 1970) (no abuse of discretion in trial court's approval of receiver's settlement on fidelity bond claim).

A receiver's authority to settle claims is inherent in the charge to an equity receiver to collect assets:

> Since the court has authority to authorize the receiver to collect assets of a corporation, it has the further authority to authorize the receiver to sue to collect the assets of the corporation. It naturally follows, as a necessary corollary of the foregoing, that the receiver has the power, when so authorized by the court, to compromise claims either for or against the receivership and whether in suit or not in suit.

3 Clark, Ralph Ewing, *A Treatise on the Law and Practice of Receivers*, § 770, p. 1424 (3d ed. 1992) (cited with approval in *Securities and Exchange Commission v. Credit Bancorp*, *Ltd.*, 2002 WL 1792053 at *4 (S.D.N.Y. August 2, 2002)). Settlement of claims by a receiver furthers the purposes of an equity receivership to marshal the estate's assets for the benefit of injured creditors. *Securities and Exchange Commission v. Parish*, 2010 U.S. Dist. LEXIS 11786 at *18-19 (D.S.C. 2010) (receiver's proposed settlement approved by the court, finding the settlement was "consistent with and furthers the purposes of the receivership").

No particular procedure applies to approval of a settlement under federal law in an equity receivership. *See, Gordon*, 336 Fed. Appx. at *548-49. "[N]o federal rules prescribe a particular standard for approving settlements in the context of an equity receivership; instead, a district court has wide discretion to determine what relief is appropriate." *Gordon*, 336 Fed. Appx. at *549. Nevertheless, courts in receivership proceedings have looked to decisions in other legal contexts, such as bankruptcy cases or class action lawsuits, for factors that may be weighed to reach an informed decision that the proposed settlement is fair and reasonable. For example, the standard for approval of a settlement by a receiver and the factors that should be weighed in assessing the fairness of the settlement were described in *Securities and Exchange Commission v. Princeton Economic International, Inc.*, 2002 WL 206990 at *1:

> A settlement proposed by a temporary or permanent receiver warrants approval if the district court finds that the proposed settlement is fair. [Citations omitted.] Moreover, the Court should consider "whether such action is prudent in the administration of the assets of the estate" and should balance and weigh various factors including, *inter alia*: (1) the probable validity of the claim; (2) the apparent difficulties attending its enforcement through the courts; (3) the collectability of judgment thereafter; (4) the delay and expenses of the litigation to be incurred; and (5) the amount involved in the compromise." *Securities and Exchange Commission v. Arkansas Loan & Thrift Corp.*, 297 F.Supp. 73, 78 (W.D. Ark. 1969) (citation omitted), *aff'd* 427 F.2d 1171 (8th Cir. 1970).

In *Gordon v. Dadante*, 336 Fed. Appx. 540, the Sixth Circuit rejected the contention that the district court abused its discretion by failing to explicitly consider all of the factors courts analyze in approving class action settlements as set forth in *Girsh v. Jepson*, 521 F. 2d 153, 157 (3rd Cir. 1975). In concluding the district court correctly determined that it was not obligated to

consider each of the *Girsh* factors, the Sixth Circuit noted that the district court in *Gordon* referred to the factors in *Girsh* as being a "useful guide." *Gordon v. Dadante,* 336 Fed. Appx. at *548. The district court in *Gordon* cited the *Girsh* factors generally in its consideration of the settlement in that case, including the following factors that are relevant here: (1) the complexity, expense and potential length of the litigation; (2) the response to the proposed settlement by the potential beneficiaries of the settlement; (3) the risks of establishing liability and damages at trial; (4) the "range of reasonableness" of the amount of the settlement in comparison to the maximum potential recovery; and (5) the "range of reasonableness" of the amount of the settlement in relation to the potential risks of litigation. *Gordon v. Dadante*, No. 1:05CV2726, 2008 WL 1805787 n. 12 at *13 (N.D. Ohio 2008), *aff'd* 336 Fed. Appx. 540.

The standards for approval of settlements in bankruptcy may also provide an appropriate analogy and list of factors to consider in approving a settlement in a receivership as "fair," and courts in class actions also look to those factors in reviewing proposed settlements. *See Newman v. Stein*, 464 F.2d 689, 692, n. 6 (2d Cir. 1972) (citing the standards set forth by the United States Supreme Court for approval of settlements in bankruptcy in *Protective Committee for Independent Stockholders of TMT Trailer Perry, Inc. v. Anderson*, 390 U.S. 414, 88 S.Ct. 1157 (1968)). The factors cited in *TMT Trailer* and subsequent bankruptcy decisions that should be considered by the bankruptcy court in reviewing and approving a proposed compromise in bankruptcy were summarized by the Court of Appeals for the Second Circuit:

> Those interrelated factors are: (1) the balance between the litigation's possibility of success and the settlement's future benefits; (2) the likelihood of complex and protracted litigation, "with its attendant expense, inconvenience and delay," including the difficulty of collecting on the judgment; (3) the "paramount interests of the creditors," including each affected class's relative benefits "and the degree to which creditors either do not object to or affirmatively support the proposed settlement"; (4) whether other parties in interest support the settlement; (5) the "competency and experience of counsel" supporting, and "[t]he experience and knowledge of the bankruptcy court judge" reviewing, the settlement; (6) "the nature and breadth of releases to be obtained by officers and directors"; and (7) "the extent to which the settlement is the product of arm's length bargaining." [Citations omitted.]

*In re Iridium Operating LLC*, 478 F.3d 452, 462 (2d Cir. 2007).

Relying on the standards established in the *TMT Trailer* decision, the Court of Appeals for the Second Circuit also explained the role played by the bankruptcy judge in determining whether to approve a settlement in a leading bankruptcy case:

> In undertaking an examination of the settlement, we emphasize that this responsibility of the bankruptcy judge, and ours upon review, is not to decide the numerous questions of law and fact raised by appellants but rather to canvass the issues and see whether the settlement "fall[s] below the lowest point in the range of reasonableness" [Citations omitted].

*In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983). In *W.T. Grant*, the court emphasized that the bankruptcy judge was not required "to determine whether the settlement was the best that could have been obtained, something that neither he nor we can ever know." *Id.* at 613.

Thus, under the standard for approval of a settlement in bankruptcy, while the court reviewing the proposed settlement must apprise itself of the facts and issues necessary "to compare the terms of the compromise with the likely rewards of litigation" (*TMT Trailer v. Anderson*, 390 U.S. at 425), the settlement hearing must not be turned into a trial or mini-trial since that would defeat one of the key purposes of the settlement, which is avoiding costly and wasteful litigation. *Newman v. Stein*, *supra*, 464 F.2d at 692.

B.   *The Settlement Agreement Is Well Within the Range of Reasonableness.*

For several reasons, the Receiver believes that the Settlement Agreement is an outstanding settlement for the receivership estate and well within the "range of reasonableness" standard to be utilized by the Court in determining whether it should be approved. Kane Declaration, ¶¶ 14-17. First, The Agreement provides substantial benefits to the Receiver: a fixed recovery of $41 million, 53.58% of the Receiver's claim against the Sun America Parties, without any risk or expense of litigation. This is an outstanding settlement for the receivership estate and well within the range of reasonableness standard to be utilized by the Court in determining whether it should be approved. Indeed, the Court has previously approved the Receiver's settlement of the following clawback claims: (a) Continental Assurance Company for

$21,688,809, or 50% of the Receiver's claim (*see,* Order Granting Motion for Approval of Modified Settlement Agreement and Release Between Receiver and Continental Assurance Company And For Related Orders entered on August 1, 2011 (CFTC Action Dckt. No. 510; SEC Action Dckt. No. 479)); (b) Baptist Healthcare System, Inc., for $2.1 million, or 52.41% of the Receiver's claim (*see,* Order Granting Motion for Approval of Settlement Agreement and Release Between Receiver and Baptist Healthcare System, Inc., entered on January 4, 2012 (CFTC Action Dckt. No. 547; SEC Action Dckt. No. 519)); (c) Cooper Industries Master Trust for Defined Benefit Plans and State Street Bank and Trust Company for $11,980,166, or 55% of the Receiver's claim (*see,* Order Granting Motion for Approval of Settlement Between Receiver, Cooper Industries Master Trust for Defined Benefit Plans and State Street Bank and Trust Company, entered on January 4, 2012 (CFTC Action Dckt. No. 546; SEC Action Dckt. No. 518)); and (d) Intermountain Health Care, Inc., and IHC Health Services, Inc., for $5,375,370, or 55% of the Receiver's claim (*see,* Order Granting Motion for Approval of Settlement Agreement and Release Between Receiver, Intermountain Health Care, Inc., and IHC Health Services, Inc., entered on October 19, 2012 (CFTC Action Dckt. No. 611; SEC Action Dckt. No. 588)). Kane Declaration, ¶ 14.

There are other reasons why this is an excellent settlement. Potential winning investor litigation against the Sun America Parties is not without risk. For example, several of the Losing Investors suggested in a brief filed with this Court in connection with the Court's determination on the claims allowance and distribution procedures that the Receiver's factual contentions are inaccurate. *See* Joint Proposal of the 7 WGTC LPs for the Distribution of Receivership Assets filed October 22, 2010 ("Joint Proposal"; SEC Docket No. 356). The Joint Proposal posits that WGTI and WGTC were not financially inseparable, were not operated as a single entity, and did not constitute a unitary Ponzi-type fraudulent enterprise. The Joint Proposal further asserts that, at least as to WGTC, it was not operated as a Ponzi scheme because substantial legitimate profits were earned by that entity. Other Losing Investors argued for a "Constant Dollar" approach to the calculation of claims which might also be argued by the Winning Investors to try to reduce or

eliminate their potential liability in the Receiver's Actions.  *See, e.g.,* Qwest Asset Management Co. and Qwest Pension Trust's Proposal for Distribution of Funds Held By the Receiver ("Qwest Proposal"; SEC Action, Docket No. 361).  Some or all of these arguments may be used to try to defend the Receiver's Actions and/or its claim against the Sun America Parties if litigation against them was required.  Kane Declaration, ¶ 15.

While the Receiver strongly disputes the contentions raised by the Sun America Parties in defense of the Receiver's claims, contentions such as these demonstrate that the Receiver's actions against the Sun America Parties are not without litigation risk.  Therefore, it is entirely reasonable that the Receiver settle with the Sun America Parties, avoiding the expense and uncertainty of litigation, for $41 million, or 53.58% of the Receiver's claim against the Sun America Parties.  Kane Declaration, ¶ 16.

For all of these reasons, the Settlement Agreement is well within the range of reasonableness and is a cost effective resolution of the claims against the Sun America Parties. The settlement results in substantial value to the receivership estate without the sizeable expense and uncertainty of litigation.

IV

<u>THE COURT SHOULD ISSUE A BAR ORDER PRECLUDING CLAIMS AGAINST THE SUN AMERICA PARTIES FOR THE TRANSFERS RESOLVED BY THE SETTLEMENT</u>

It is customary for courts to enter orders barring claims arising out of the same transactions from being asserted against the settling party in connection with the approval of a settlement.  For example, in *Gordon v. Dadante, supra*, the settlement agreement included as conditions to the settlement both a requirement that the District Court enter a bar order and that the investor parties who received distributions from the settlement funds execute a release.  The District Court found these conditions to be "both fair, and fairly typical, conditions to impose in exchange for settlement" and that "[e]ntry of a bar order that is required by a proposed settlement agreement is within a court's authority and discretion. [Citations omitted.]" *Gordon v. Dadante,* 2008 WL 1805787 at *14, *aff'd* 336 Fed. Appx. 540.

In a case factually similar to this case, the court in *Securities and Exchange Commission v. Parish*, 2010 U.S. Dist. LEXIS 11786 (D.S.C. 2010) was asked to enter a bar order in connection with a settlement in an equity receivership of claims by the receiver against an investment advisory firm formed by one of the defendants (Parish) and a third party (Cassaday), along with Cassaday and the third party's professional liability insurer. The receiver entered into a proposed settlement with the firm, Cassaday and the insurer (the "Settling Parties"), funded largely by the insurer, that was conditioned upon entry of a bar order "enjoining the filing of and/or continued prosecution of claims by all third-parties (including investors) against the Settling Parties" arising out of or connected with the defendants' investment activities and their relationship with the firm and Cassaday. The bar order in that case would bar claims by the 130 investors who dealt with the firm and others from being asserted against the settling parties. The Court analyzed its authority to issue the bar order and concluded it had such authority under the All Writs Act, 28 U.S.C. § 1651, which allows district courts to enter orders necessary and appropriate in aid of their jurisdiction and to prevent their orders from being frustrated, and applicable receivership law, which specifically authorizes injunctions against third parties in protecting the courts' *in rem* jurisdiction over assets of the receivership estate. The court held, at *15-18:

> The All Writs Act authorizes federal courts to "issue all writs necessary and appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651. This includes the authority "to issue such commands as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained." *In re Am. Honda Motor Co., Inc., Dealerships Relations Litig.*, 315 F. 3d 417, 437-38 (4th Cir. 2003 (internal quotations omitted) (quoting *Pennsylvania Bureau of Corrections v. U.S. Marshals Service*, 474 U.S. 34, 40, 106 S.Ct. 355, 886 L.Ed. 2d 189 (1985)).
>
> A "district court has within its equity power the authority to appoint receivers and to administer receiverships." *Gilchrist v. Gen. Electric Capital Corp.*, 262 F. 3d 295, 302 (4th Cir. 2001) (citing Fed. R. Civ. P. 66). Moreover, a "district court has within its equity power the authority to protect its jurisdiction over a receivership estate through the All Writs Act, 28 U.S.C. § 1651, and through its injunctive powers, consistent with Federal Rule of Civil Procedure 65. Of course,

the exercise of this authority is always subject to other limitations, statutory and constitutional, which limit the jurisdiction of federal courts." *Id.* By appointing a receiver in this matter, the court created a receivership estate over which it has *in rem* jurisdiction. *Id.* That jurisdiction extends to all assets of the estate, including choses of action. *See Id.* Accordingly, this court has the power under the All Writs Act to issue injunctions in order to protect the estate's choses of action against the Settling Parties (including any settlement reached in connection with those claims).

. . . [A] district court may issue an injunction when "calculated in [the court's] sound judgment to achieve the ends of justice entrusted to it." *Adams v. United States*, 317 U.S. 269, 273, 63 S.Ct. 236, 87 L.Ed. 268 (1942). Finally, the court has the power to extend the injunction to third-parties who are not parties to the action nor were involved in the wrongdoing: "The power conferred by the Act extends, under appropriate circumstances, to persons who, though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper administration of justice and encompasses even those who have not taken any affirmative action to hinder justice. [Citations omitted.]

The authority of the receivership court to issue blanket stay orders, protecting the court's *in rem* jurisdiction over the assets of the receivership estate by prohibiting the pursuit of claims against receivership defendants and receivership assets, is well-established in the case law. For example, in *Securities and Exchange Commission v. Wencke*, 622 F.2d 1363 (9th Cir. 1980), the Ninth Circuit enforced an order for a blanket stay of actions against the receivership estate to protect the assets of the estate during the receivership and in the exercise of the court's equitable jurisdiction over the administration of the receivership. The court expressly found the blanket stay was "necessary to achieve the purposes of the receivership." *Id.* at 1369. *See,* also, *Securities and Exchange Commission v. United Financial Group*, 576 F.2d 217, 221 n. 8 (9th Cir. 1978) ("The receivership court has broad equitable powers to prevent interference with the administration of the estate by blanket stay orders"); *Federal Trade Commission v. Productive Marketing, Inc.*, 136 F.Supp.2d 1096, 1105-1106 (C.D. Cal. 2001) (injunction against actions by non-parties to preserve assets of receivership estate "is a classic example of an *in rem* injunction" imposed on parties as well as non-parties); *Eller v. Indian Motorcycle Manufacturing, Inc.*, 929 F.Supp. 369 (D. Colo. 1995).

V

CONCLUSION

The Sun America Settlement Agreement is fair and reasonable, and provides a significant recovery for the receivership estate. It is respectfully requested that the Court grant the Receiver's motion and enter orders approving the Sun America Settlement Agreement and barring claims against the Sun America Parties as more particularly provided therein.

Dated:  April 10, 2013
Los Angeles, California

                Respectfully submitted,

                /s/ Thomas S. Arthur
                Thomas S. Arthur,  Esq.
                Craig A. Welin, Esq.
                Admitted Pro Hac Vice in the United States District Court-Southern District of New York
                FRANDZEL ROBINS BLOOM & CSATO, L.C.
                6500 Wilshire Boulevard, 17th Floor
                Los Angeles, California 90048-4920
                Telephone: (323) 852-1000
                Facsimile: (323) 651-2577
                E-mail: tarthur@frandzel.com
                E-mail: cwelin@frandzel.com
                Co-Counsel for Receiver
                Robb Evans & Associates LLC

                -and-

                Gary Owen Caris, Esq.
                Lesley Anne Hawes, Esq.
                Admitted Pro Hac Vice in the United States District Court-Southern District of New York
                MCKENNA LONG & ALRIDGE LLP
                300 South Grand Avenue, 14th Floor
                Los Angeles, California 90071-3124
                Telephone: (213) 688-1000
                Facsimile: (213) 243-6330
                E-mail: gcaris@mckennalong.com
                E-mail: lhawes@mckennalong.com
                Co-Counsel for Receiver
                Robb Evans & Associates LLC

                -and-

                Christopher F. Graham, Esq.
MCKENNA LONG & ALRIDGE LLP
230 Park Avenue, Suite 1700
New York, NY  10169
Telephone:  (212) 922-1800
Facsimile:  (212) 922-1819
E-mail:  cgraham@mckennalong.com
Co-Counsel for Receiver
Robb Evans & Associates LLC