UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION, | Civil Action No.:  09-CV-1749 (GBD) |
| Plaintiff, | |
| -against- | |
| STEPHEN WALSH, PAUL GREENWOOD, WESTRIDGE CAPITAL MANAGEMENT, INC., WG TRADING INVESTORS, LP, WGIA, LLC, | |
| Defendants, | |
| WESTRIDGE CAPITAL MANAGEMENT ENHANCEMENT FUNDS INC., WG TRADING COMPANY LP, WGI LLC, K&L INVESTMENTS, AND JANET WALSH, | |
| Relief Defendants. | |
| SECURITIES AND EXCHANGE COMMISSION, | |
| Plaintiff, | Civil Action No.:  09-CV-1750 (GBD) |
| -against- | |
| WG TRADING INVESTORS, L.P., WG TRADING COMPANY LIMITED PARTNERSHIP, WESTRIDGE CAPITAL MANAGEMENT, INC., PAUL GREENWOOD, and STEPHEN WALSH, | |
| Defendants, | |
| ROBIN GREENWOOD and JANET WALSH, | |
| Relief Defendants. | |

### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE SEVENTEENTH JOINT APPLICATION OF THE RECEIVER AND ITS COUNSEL FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES INCURRED DURING THE PERIOD JANUARY 1, 2017 THROUGH JUNE 30, 2017

TO:   **THE HONORABLE GEORGE B. DANIELS**
      **UNITED STATES DISTRICT COURT**

This Memorandum of Points and Authorities ("Memorandum") is being submitted by

Robb Evans & Associates LLC ("Receiver"[1]) for the Westridge Entities[2] and the assets of

Stephen Walsh ("Walsh"), Paul Greenwood ("Greenwood"), and Janet Walsh ("J. Walsh"), and

the counsel employed by the Receiver, Frandzel Robins Bloom & Csato, L.C. ("Frandzel"),

Diamond McCarthy LLP ("Diamond"), and Harneys Westwood & Riegels ("Harneys") in

support of their Seventeenth Joint Application for Allowance of Compensation and

Reimbursement of Expenses Incurred during the Period of January 1, 2017 through June 30,

2017 ("Seventeenth Application").  In the Seventeenth Application, for the period for January 1,

2017 through June 30, 2017 ("Seventeenth Application Period"), the Receiver requests interim

approval of fees in the amount of $13,432.20 and reimbursement of expenses in the sum of

$1,336.73, Frandzel requests interim approval of fees in the amount of $17,635.00 and

reimbursement of expenses in the amount of $243.55, Diamond requests interim approval of fees

in the amount of $579.50, and Harneys requests interim approval of fees in the amount of

$4,435.00 and reimbursement of expenses of $233.70.[3]

---

[1] Reference to the Receiver in this Memorandum means the Receiver, the Receiver's deputies, and its staff.

[2] For purposes of this Memorandum, the "Westridge Entities" refers to Westridge Capital Management ("Westridge"), WG Trading Company LP ("WGTC"), WG Trading Investors, LP ("WGTI"), and business entities owned by or affiliated with them including Westridge Capital Management Enhancement Funds, Inc., K & L Investments, LLC, WGI LLC, WGTC Limited.

[3] Although the Receiver has been appointed over the Westridge Entities in both case Nos. 09-CV-1749 ("CFTC Action") and 09-CV-1750 ("SEC Action"), the amount of fees sought by the Receiver, Frandzel, Diamond and Harneys in this Seventeenth Application represents the total amount of fees for services rendered in both cases during the Seventeenth Application Period.

Based on the relevant law, discussed in more detail below, the Receiver, Frandzel, Diamond and Harneys request that the Court approve their fees and reimbursement of expenses as set forth in the Seventeenth Application because all fees and expenses incurred by them were reasonable and necessary to the efficient and effective administration of this Receivership Estate in light of the complexity, novelty and immediacy of the issues facing the Receiver and its counsel during the Seventeenth Application Period.  Therefore, the Receiver, Frandzel, Diamond and Harneys respectfully request that the Court authorize the Receiver to pay within 10 days from entry of an order approving the Seventeenth Application, the approved fees and expenses which they have requested.

## I.  BRIEF OVERVIEW OF THE PROCEDURAL BACKGROUND OF THE RECEIVERSHIP ESTATE AND SERVICES RENDERED BY THE RECEIVER, FRANDZEL, AND DIAMOND DURING THE SIXTEENTH APPLICATION PERIOD

A detailed recitation of the factual and procedural background of this matter is beyond the scope of this Application; however, by way of summary the procedural background and status of this receivership are as follows:

On February 25, 2009, the SEC filed a complaint against certain of the Westridge Entities, Greenwood and Walsh as well as J. Walsh and Robin Greenwood as relief defendants (the "SEC Action").  Among the allegations in the SEC Action are that Walsh and Greenwood, while operating an investment scheme to defraud investors, violated Section 17 (a) of the Securities Act of 1933, Section 10(b) of the Securities Exchange Act of 1934, and Sections 206 (1), (2), and (4) of the Investment Advisers Act of 1940.  Because the fraud was ongoing, in order to preserve the *status quo* and protect the Court's ability to approve a fair distribution for victims of the fraud, the SEC sought an order which, among other things requested the appointment of a receiver to take control of the Westridge Entities as well as Walsh, J. Walsh

and Greenwood. Thus, on February 25, 2009, the District Court entered its Order appointing Robb Evans & Associates LLC as the temporary receiver ("SEC Initial Receivership Order"). Among the duties and powers in the SEC Initial Receivership Order include preserving the *status quo* of the Westridge Entities as well as employing persons, including attorneys, to assist in carrying out the Receiver's duties.[4]

On February 25, 2009, the CFTC filed a complaint against Walsh, Greenwood and certain of the Westridge Entities (the "CFTC Action").[5] Among other things, the CFTC Action alleges that Walsh and Greenwood through the use of a scheme in which they "misappropriated at least $553 million from commodity pool participants" violated Sections 4b(a) (2) and 4(1) (A) & (B) of the Commodity Exchange Act, 7 U.S.C. Sections 6b(a)(2) and 6(1) (A) & (B), and Section 4b(a) (1) of the Commodity Exchange Act as amended by the Food, Conservation, and Energy Act of 2008. Because Walsh and Greenwood were still operating the commodity pool there was a substantial threat that the fraud would continue. Therefore, in order to immediately stop the fraudulent conduct and preserve the Court's ability to grant effective relief to the investors, the CFTC sought an order which, among other things, requested the Court appoint a receiver to take control over the assets of the Defendants. Consequently, on February 25, 2009, the District Court entered its Order appointing Robb Evans & Associates LLC as the temporary receiver ("CFTC Initial Receivership Order"). Some of the duties and powers the conferred on the Receiver in the CFTC Initial Receivership Order include: preserving, holding and managing

---

[4] On May 22, 2009, the Court entered an order for a preliminary injunction (Document No. 100) in which it ordered, among other things, that the Receiver should continue to serve in this proceeding with all of the duties and powers set forth in the  SEC Initial Receivership Order.

[5] In the CFTC Action, Westwood Capital Management Enhancement Funds Inc., WG Trading Company LP, WGI LLC, K &L Investments and J. Walsh were also named as relief defendants.

all receivership assets and perform all acts necessary to preserve the value of those assets and to choose and employ attorneys the Receiver "deems advisable or necessary in the performance of duties and responsibilities" under the order.[6]

The Receiver, after seeking the input from the SEC, the CFTC, and investment bankers, among others, wasted no time in formulating and implementing an initial course of action which included:

- Managing an orderly liquidation of the hedged portfolio;

- Identifying, evaluating, and securing the assets of the Westridge Entities, Walsh, and Greenwood;

- Determining the positions carried on the books and records of the Westridge Entities for the investors;

- Performing extensive and detailed forensic accounting on the Westridge Entities;

- Communicating with investors to commence in an effort to understand their concerns and keep them abreast of the acts be taken by the Receiver; and

- Studying business records and financial documents, and interviewing staff member of the Westridge Entities to develop an understanding of the business operations.

_____

[6] On May 22, 2009, the Court entered an order for a preliminary injunction (Document No. 108) in which it ordered, among other things, that the Receiver should continue to serve in this proceeding with all of the duties and powers set forth in the CFTC Initial Receivership Order.

During the Second Application Period which covered the period from June 1, 2009 through December 31, 2009, the Receiver continued to implement the directives issued by this Court in accordance with the Orders appointing the Receiver, which include the following:

- Obtaining the Court's approval of a claims verification procedure and a claims administration procedure, and in this regard, the Receiver is in the process of verifying individual investor's claim amounts and resolving any differences;

- The negotiation of a comprehensive stipulated protective order to enable the Receiver to provide documentation to investors so that they may have an opportunity to review the requested documentation prior to making a recommendation as to how the funds held by the Receiver should be distributed;

- Providing the Court with a recommendation concerning the release of funds to by J. Walsh and subsequent negotiation of a line of credit to be secured by a mortgage on Walsh's Florida residence;

- Commencement of the liquidation of various assets owned by Greenwood; and

- Resolution of litigation involving Greenwood and Walsh, including the negotiation of a tentative settlement involving Delaware Land Associates (of which Walsh and Greenwood are the limited partners) which may provide for a substantial benefit to the Receivership Estate.

During the Third Application Period, the Receiver continued with its efforts to implement the directives issued by this Court in accordance with the Orders appointing the Receiver, which include the following:

- Preparation of a comprehensive Second Receiver's Report filed with the Court in June 2010, which included a detailed reconciliation of the complex financial relationship between the receivership entities managed by Greenwood and Walsh;

- Completion of a Stipulated Protective Order which was approved by the Court, enabling investors to obtain and review thousands of pages of documentation which they believe is necessary to prepare and analyze a proposed plan of distribution;

- Organization and preparation for a three-day meeting in Los Angeles with virtually all of the investors in this case, in which the parties engaged in substantive discussions concerning alternative distribution procedures aimed at reaching a consensual distribution plan;

- Analysis and consideration of potential claims against certain third-party "winning" investors in order to maximize recovery to investors, including developing a litigation strategy against certain "winning" investors; and

- Continuing with the liquidation of Greenwood's and Walsh's various assets.

During the Fourth Application Period, the Receiver's activities including the following:

- Continuing with the Receiver's efforts to reach a consensual distribution plan, which included participating in a two-day meeting in New York with the vast majority of the investors;

- Proceeded with the Court-ordered claims administration process, including reviewing the voluminous investor distribution plans, reviewing the proposed plan filed by the CFTC and SEC, and commencing with the analysis and formulation of the Receiver's own distribution plan;

- Initiation of litigation against various third-party "winning" investors in order to maximize recovery to investors; and

- Continuing with the liquidation of Greenwood's and Walsh's various assets, including the completion of an auction of a portion of Greenwood's personal property collectibles.

During the Fifth Application Period, the Receiver's activities included the following:

- Reviewed and analyzed various distribution proposals submitted by the investors and after consideration of the various proposals, the Receiver prepared its own distribution plan which was submitted to the Court for approval. The Court approved the Receiver's proposed plan of distribution over the objection of various investors, and after defeating an emergency motion filed by certain investors with the Second Circuit Court of Appeals for a stay of the distribution, the Receiver disbursed $792,967,822.09 to the investors, a return to investors of approximately 84.94% of their total principal balances.

- The Receiver proceeded with the litigation against certain third-party "winning" investors, including reviewing and responding to answers, motions to dismiss or other pleadings filed in response to the complaints. The Receiver has also engaged in settlement discussions with many of the investors. With respect to one "winning" investor, the Receiver was able to settle a claim without the need for initiating litigation which, after approval by the Court, will return to the Receivership Estate in October 2011 approximately $21,000,000.00. The settlement of this particular claim was finally reached with the consensus of the CFTC and SEC, as well as investors that had previously objected to the terms of an initial settlement.

- Continuing with the liquidation of Greenwood's and Walsh's various assets. In this regard, the Receiver completed the sale of the Walsh residence and obtained Court approval for the auction of the remaining farm equipment at the Grand Central pony farm.

- Obtained Court approval of the settlement in the Pulte litigation and related matters, which may, depending upon the value of certain real property, result in a substantial return to the Receivership Estate.

During the Sixth Application Period, the Receiver's activities included the following:

- Following the distribution to investors by the Receivership Estate in the sum of $792,967,822.09 in April 2011, the Receiver has engaged in the process of defending the Court's Distribution Order in response to the

appeals filed by various WGTC limited partners and the Kern County Employees' Retirement Association.

- The Receiver has assisted in the resolution of various claims against "winning" investors, including settlement negotiations with Coopers Industries, Inc., resulting in a recovery to the estate of approximately $11.9 million, a settlement with the Baptist Healthcare Systems, Inc., resulting in a settlement in favor of the estate for approximately $2.1 million, and a settlement with the University at Buffalo Foundation resulting in a settlement in favor of the estate in the sum of $240,000.00. The Receiver has also obtained from Continental Assurance Company the sum of $21.6 million which was paid in October 2011 in accordance with a previously Court-approved settlement.  The Receiver is continuing to assist counsel in the litigation against other "winning" investors.

- Continuing with the liquidation of Greenwoods' various assets.  In this regard, the Receiver completed the sale of the remaining Greenwood personal property collectibles, completed the auction of the remaining farm equipment at the Grand Central Pony Farm, and is continuing with its efforts to sell the various Greenwood residences and the Grand Central Pony Farm.

During the Seventh Application Period, the Receiver's activities included the following:

- The Receiver formulated a second interim distribution plan pursuant to which the Receiver proposed to distribute $40,000,000.00 to investors and

submitted a motion to the Court for approval of the second interim
distribution plan.

- The Receiver assisted in the resolution of various claims against "winning
  investors", including a settlement with Intermountain Healthcare  which
  will provide a recovery to the estate of approximately $5,300,000.00.

- The Receiver continued its efforts to liquidate the Greenwoods' various
  assets.  In this regard, the Receiver inspected the Greenwoods' residences
  and the Grand Central Pony Farm, met with Robin Greenwood's counsel
  to discuss the sale of the properties, and diligently pursued the sales of the
  properties.

During the Eighth Application Period, the Receiver's activities included the following:

- The Receiver obtained Court approval of a second interim distribution
  plan pursuant to which the Receiver proposed to distribute $40 million to
  investors.

- The Receiver obtained approval of a motion for authority to sell the Grand
  Central Pony Farm and the Greenwoods' remaining residences.  The
  Receiver has engaged in ongoing discussions and negotiations regarding
  the sale of these remaining assets.

- The Receiver has continued to assist in litigation and resolution of various
  claims against "winning" investors, including the resolution of claims
  asserted by James Carder against the estate, as well as claims the estate
  holds against Carder as a "winning" investor.

- The Receiver has responded to ongoing discovery requests by various investors pursuing third party claims against various insurers. In this regard, the Receiver responded to voluminous documents requests and in one instance, has had its deposition taken in connection with certain third party litigation.

During the Ninth Application Period, the Receiver's activities included the following:

- Following the decision by the Second Circuit Court of Appeals affirming the Receiver's distribution plan in this case, the Receiver disbursed $40 million to investors.

- The Receiver negotiated a settlement with the Sun America entities, a "winning" investor in the "clawback litigation", which has resulted in the payment to the Receivership Estate of $41 million.

- The Receiver negotiated and entered into a purchase and sale agreement for the sale of the Grand Central Pony farm.

- The Receiver responded to ongoing discovery requests by various investors pursuing third party claims against various insurers, including responding to voluminous document requests. In addition, the Receiver has responded to document requests in connection with the ongoing disputes between the CFTC and SEC, on the one hand, and Janet Schaberg, on the other.

During the Tenth Application Period, the Receiver's activities included the following:

- The Receiver completed the sale of the Grand Central Pony Farm resulting in a net recovery to the estate in the sum of $14,345,520.23.

- The Receiver obtained Court approval for a non-investor creditors' claims verification procedure.

- The Receiver obtained from the Sun America entities the sum of $41 million, which was the result of a prior settlement in the "clawback" litigation.

- The Receiver obtained approval for a third interim distribution in the sum of $50 million; however, the distribution has been postponed while the Receiver investigates potential IRS tax claims against the defendants and relief defendants.

- The Receiver has continued to respond to ongoing discovery requests by various investors pursuing third-party claims against various insurers.  In addition, the Receiver has responded to requests from the U.S. Attorney's Office for various documents in conjunction with the ongoing criminal proceedings.

During the Eleventh Application Period, the Receiver's activities included the following:

- The Receiver negotiated a resolution of a "clawback" claim against the Trustees of Tufts College, which resulted in a recovery to the Receivership Estate of $2,176,595.00.

- The Receiver also negotiated a resolution of a "clawback" claim against Zephros Limited and Credit Suisse which resulted in a recovery to the Receivership Estate of $3,384,000.00.

- The Receiver continues with its efforts to resolve the potential IRS tax claims against individual defendants and various WG Entities, and has

kept the Court and all creditors advised of developments concerning this issue.

- The Receiver has continued to respond to ongoing discovery requests by various parties pursuing third-party claims, including document production requests and preparing the Receiver for his possible deposition in these matters.

During the Twelfth Application Period, the Receiver's activities included the following:

- The Receiver completed negotiations with, and obtained Court approval for, a settlement with the Nebraska Investment Council of a "clawback" claim against the Nebraska Investment Council, which resulted in a recovery to the Receivership Estate of $800,000.00.

- The Receiver continued with its efforts to resolve the potential IRS tax claims against individual defendants and various WG Entities, and has kept the Court and all creditors advised of developments concerning this issue.

- The Receiver has continued to respond to ongoing discovery requests by various parties pursuing third-party claims, including document production requests and preparing for its deposition in one of the third-party litigation matters.

During the Thirteenth Application Period, the Receiver's activities included the following:

- The Receiver continued with its efforts to resolve the potential IRS tax claims against individual defendants and various WG entities, including

the finalization of a stipulation with the IRS, as well as negotiations with the State of New York concerning similar tax claims that it may assert.  In addition, the Receiver has kept the Court and all creditors advised of developments concerning this issue.

- The Receiver has completed the sale of the Greenwoods' residences.

- The Receiver has continued to respond to ongoing discovery requests by various parties in pursuing third party claims, including document production requests, and has assisted creditors in the preparation of documentation necessary for their ongoing third party litigation.

During the Fourteenth Application Period, the Receiver's activities included the following:

- The Receiver finalized stipulations with the IRS and State of New York concerning potential tax claims that might be asserted against various receivership defendants and individuals, and thereafter had the stipulations approved by the Court resulting in the Receiver being able to proceed with a third interim distribution to defrauded investors in the sum of $75,712,831.[7]

During the Fifteenth, Sixteenth and Seventeenth Application Periods, the Receiver's activities included the following:

- The Receiver continued with its efforts to liquidate the Receiver's interest in the Liberty Hill and Sweetwater projects.

---

[7] The Receiver continued to assist defrauded investors in their ongoing third-party litigation against various entities.

- The Receiver also continued in its efforts to resolve the sums owed to it by Oakmont Holdings.

- The Receiver continued discussions with Orion Constellation regarding the various liquidation scenarios for the liquidation of funds held by Orion.

- The Receiver began the process of considering procedures necessary to close the estate, including engaging in the form of consent judgments that will be required by the SEC and CFTC as part of the closing of the Receivership Estate.

At the end of the First Reporting Period (May 31, 2009), the Receiver had collected $819,108,775.18. At the end of the Second Application Period (December 31, 2009), the Receiver had collected total funds of $874,131,988.09. At the end of the Third Application Period (June 2010), the Receiver had collected total funds of $875,649,715.59. At the end of the Fourth Application Period (December 31, 2010), the Receiver had collected total funds of $880,280,472.84. At the end of the Fifth Application Period (June 30, 2011), the Receiver had collected total funds of $887,919,883.00. At the end of the Sixth Application Period (December 31, 2011), the Receiver had collected total funds of $910,666,116.56. At the end of the Seventh Application Period (June 30, 2012), the Receiver had collected total funds of $934,878,175.21. At the end of the Eighth Application Period, December 31, 2012, the Receiver had collected total funds of $941,230,551.22. At the end of the Ninth Application Period, June 30, 2013, the Receiver had collected total funds of $946,183,089.01. At the end of the Tenth Application Period, December 31, 2013, the Receiver has collected total funds of $1,001,763,724.07. At the end of the Eleventh Application Period, June 30, 2014, the Receiver

has collected total funds of $1,800,207,824.03. At the end of the Twelfth Application Period, December 31, 2014, the Receiver had collected total funds of $1,013,212,021.25. At the end of the Thirteenth Application Period, June 30, 2015, the Receiver had collected total funds of $1,019,902,218.84. At the end of the Fourteenth Application Period, December 31, 2015, the Receiver had collected total funds of $1,020,411,608.52. At the end of the Fifteenth Application Period, June 30, 2016, the Receiver had collected total funds of $1,023,395,999.43. At the end of the Sixteenth Reporting Period, the Receiver had collected total funds of $1,023,549,815.49. At the end of the Seventeenth Reporting Period, the Receiver had collected total funds of $1,024,710,616.98. Notably, as of June 30, 2017, the Receiver had disbursed to investors the sum of $978,343,168.17.[8]

The following summarizes the legal services Frandzel provided the Receiver during the Seventeenth Application Period:[9]

- Assisted the Receiver in formulating its strategy and analysis in liquidating the Receiver's interest in the Liberty Hill and Sweetwater projects.

The following summarizes the legal services Diamond provided the Receiver in connection with its activities during the Seventeenth Application Period:[10]

---

[8] Both the Seventeenth Application and the Declaration of Brick Kane filed concurrently herewith provide a more in-depth discussion of the actions taken by the Receiver during the Seventeenth Application Period.

[9] Both the Seventeenth Application and the Declaration of Craig A. Welin filed concurrently herewith provide a more detailed discussion of the legal services Frandzel provided the Receiver during the Seventeenth Application Period.

[10] Both the Seventeenth Application and the Declaration of Brick Kane filed concurrently herewith provide a more detailed discussion of the legal services rendered by Diamond and Harneys during the Seventeenth Application Period.

- Serving as local litigation counsel to the Receiver through its New York office.

The following summarizes the legal services Harneys provided the Receiver in connection with the activities during the Seventeenth Application Period:

- Assisted the Receiver with the liquidation of the various BVI entities which are related to the receivership defendants.

## II.   LEGAL DISCUSSION OF THE FACTORS TO BE CONSIDERED BY THE COURT IN AWARDING FEES

The CFTC Interim Order states:

> The Receiver and all personnel hired by the Receiver as herein authorized, including counsel to the Receiver, are entitled to reasonable compensation for the performance of duties pursuant to this Order ad for the cost of actual out-of-pocket expenses incurred by them, from the assets now held by, or in the possession or control of, or which may be received by the Defendants or Relief Defendants.

While the SEC Interim Order states:

> IT IS FURTHER ORDERED that the Defendants shall pay the reasonable costs, fees and expenses of the receiver incurred in connection with the performance of his duties described herein, including, but not limited to, the reasonable costs, fees and expenses of all persons who may be engaged or employed by the receiver to assist him in carrying out his duties and obligations.

Applicable case law on equity receiverships sets forth the standards for approving compensation paid to a Receiver and his counsel. Under the case law, the District Court has discretion to determine compensation to be awarded to a court-appointed equity receiver and his or her counsel and may consider "all of the factors involved in a particular receivership" in determining the appropriate fee, *Securities & Exchange Comm'n v. Byers*, 590 F. Supp. 2d 637, 644 (S.D.N.Y. 2008) (*citing Gaskill v. Gordon*, 27 F.3d 248, 253 (7th Cir. 1994)). Although some authority, including judicial opinions in other cases and legal treatises, may provide "convenient guidelines," a receivership is a "unique situation [that] renders direct reliance on

precedent impossible." *Securities & Exchange Comm'n v. W.L. Moody & Co.*, 374 F. Supp. 465, 480 (S.D. Tex. 1974), aff'd 519 F.2d 1087 (5th Cir. 1975).

In allowing counsel fees in Securities Act receiverships, a court "will consider…the complexity of problems faced, the benefit to the Receivership Estate, the quality of work performed, and the time records presented." *Securities & Exchange Comm'n v. Fifth Ave. Coach Lines, Inc.,* 364 F. Supp. 1220, 1222 (S.D.N.Y 1973); *see also Moody,* 374 F. Supp. at 485 (stating that a "basic consideration is the nature and complexity of the legal problems confronted and the skill necessary to resolve them"); *United States v Code Prods.,* 362, F. 2d 669, 673 (3rd Cir. 1966) (stating that a court should consider the time, labor, and skill required (but not necessarily expended); the fair value of such time, labor and skill; the degree of activity; the dispatch with which the work is conducted; and the result obtained). A "significant factor is the amount of money involved" in the receivership. *Moody,* at 486. In essence, a receiver's legal fees "must be reasonable in light of the services rendered by counsel and the amount of property held in the receivership." *Gasser v. Infanti Int'l, Inc.,* 358 F. Supp. 2d 176, 182 (E.D.N.Y. 2005)

While "[r]esults are always relevant," the quality of a result should be measured by more than just an increase in monetary value. *Securities & Exchange Comm'n v. Elliott,* 953 F.2d 1560, 1577 (11th Cir. 1992), *quoting Moody,* 374 F. Supp. at 480. ("Even though a receiver may not have increased, or prevented a decrease in, the value of the collateral, if a receiver reasonably and diligently discharges his duties, he is entitled to compensation.") Obviously, overall results can be determined only at the conclusion of the case, but the continued progress made by the Receiver during the Fourteenth Application Period amply demonstrates the diligence and thoroughness with which the Receiver and counsel approach their work and the substantial benefit, both financial and intangible, that flowed from that work.

Moreover, "[t]ime spent cannot be ignored." *Moody,* 374 F. Supp. at 483.  This is particularly true when the dimension and complexity of a receivership prevent counsel from taking on other full time assignments.  *Id.* at 483-486 (describing the efforts of the receiver counsel's in the difficult task of determining ownership and disposability of a bank's assets and the high priority given to the matter by counsel).

Under these standards, the Receiver, Frandzel, Diamond and Harneys believe that the amount of fees and reimbursement of expenses sought in the Seventeenth Application are plainly reasonable.  During the Seventeenth Application Period, the Receiver has continued to pursue the primary objectives of the Receivership Estate, namely, distribution of funds to the rightful investors as quickly as possible.  In this regard, the Receiver, during the Seventeenth Application Period, continued with its efforts to liquidate its interest in various remaining assets, including the Orion Fund.  The Receiver also turned its efforts to wrapping up the Receivership Estate, including the Receiver's liquidation of its interest in the Liberty Hill and Sweetwater projects. Clearly, the Receiver's efforts during the Seventeenth Application Period have resulted in tremendous benefit to all investors.

All of the work billed in the various categories was geared to an orderly administration of the estate in the most expeditious manner.  As can been seen from the Invoices attached to the declarations of Brick Kane and Craig A. Welin, a thoughtful approach was given to all tasks undertaken and was arduously supervised.  When possible, the duplication of tasks was avoided and when it was necessary for duplicative work to be done (e.g. reviewing court orders, meetings amongst attorneys), often times the work of only one professional has been charged. Considering the complexity and quantity of the issues the Receiver had to address during this case, the fees of the Receiver, Frandzel, Diamond and Harneys are justified and reasonable.

## III.    CONCLUSION

Based on the foregoing, as well as the information in the Seventeenth Fee Application, and the declarations of Brick Kane and Craig A. Welin, the Receiver, Frandzel, Diamond and Harneys respectfully request that the Court grant the Seventeenth Fee Application.

Dated:  March *22,* 2018

                              /s/ Craig A. Welin
                              Craig A. Welin, Esq.
                              Admitted Pro Hac Vice in the United States District
                              Court-Southern District of New York
                              FRANDZEL ROBINS BLOOM & CSATO, L.C.
                              1000 Wilshire Boulevard, 19th Floor
                              Los Angeles, California  90017-2427
                              Telephone:  (323) 852-1000
                              Facsimile:  (323) 651-2577
                              E-mail:  cwelin@frandzel.com
                              Co-Counsel for Receiver
                              Robb Evans & Associates LLC