UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION,<br><br>Plaintiff,<br><br>-against-<br><br>STEPHEN WALSH, PAUL GREENWOOD, WESTRIDGE CAPITAL MANAGEMENT, INC., WG TRADING INVESTORS, LP, WGIA, LLC,<br><br>Defendants,<br><br>WESTRIDGE CAPITAL MANAGEMENT ENHANCEMENT FUNDS INC., WG TRADING COMPANY LP, WGI LLC, K&L INVESTMENTS, AND JANET WALSH,<br><br>Relief Defendants. | Civil Action No.: 09-CV-1749 (GBD) |
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>-against-<br><br>WG TRADING INVESTORS, L.P., WG TRADING COMPANY LIMITED PARTNERSHIP, WESTRIDGE CAPITAL MANAGEMENT, INC., PAUL GREENWOOD, and STEPHEN WALSH,<br><br>Defendants,<br><br>ROBIN GREENWOOD and JANET WALSH,<br><br>Relief Defendants. | Civil Action No.: 09-CV-1750 (GBD) |

**TWENTY-FIRST JOINT APPLICATION OF THE RECEIVER, FRANDZEL ROBINS BLOOM & CSATO, L.C. AND BARNES & THORNBURG LLP FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES INCURRED DURING THE PERIOD JANUARY 1, 2019 THROUGH DECEMBER 31, 2019**

**TO: THE HONORABLE GEORGE B. DANIELS**
**UNITED STATES DISTRICT COURT**

Robb Evans & Associates LLC ("Receiver"[1]) for the Westridge Entities[2] and the assets of Stephen Walsh ("Walsh"), Paul Greenwood ("Greenwood"), and Janet Walsh ("J. Walsh"), and the counsel employed by the Receiver: Frandzel Robins Bloom & Csato, L.C. ("Frandzel") and Barnes & Thornburg LLP ("Barnes") hereby submit their Twenty-First Joint Application for Allowance of Compensation and Reimbursement of Expenses Incurred During the Period of January 1, 2019 through December 31, 2019 ("Twenty-First Application"). For the period January 1, 2019 through December 31, 2019 ("Twenty-First Application Period"), the Receiver requests interim approval of fees in the amount of $14,408.10 and reimbursement of expenses in the amount of $22,558.79, Frandzel requests interim approval of fees in the amount of $42,830.00 and reimbursement of expenses in the amount of $3,149.82, and Barnes requests interim approval of fees in the amount of $1,138.50[3];

This Twenty-First Application contains the following sections:

**Section I** provides a brief summary of the background of the receivership.

**Section II** summarizes the procedures used by the Receiver and Frandzel in compiling their respective billing and also explains declarations that are submitted in support of this Twenty-First Application and the exhibits attached to them.

---

[1] Reference to the Receiver in this Twenty-First Application means the Receiver, the Receiver's deputies, and its staff.

[2] For purposes of this Twenty-First Application, the "Westridge Entities" refers to Westridge Capital Management ("Westridge"), WG Trading Company LP ("WGTC"), WG Trading Investors, LP ("WGTI"), and business entities owned by or affiliated with them including Westridge Capital Management Enhancement Funds, Inc., K & L Investments, LLC, WGI LLC, WGTC Limited.

[3] Although the Receiver has been appointed over the Westridge Entities in both case Nos. 09-CV-1749 ("CFTC Action") and 09-CV-1750 ("SEC Action"), the amount of fees sought by the Receiver, Frandzel and Barnes in this Twenty-First Application represents the total amount of fees for services rendered in both cases during the Twenty-First Application Period.

**Section III** describes the services provided by the Receiver and Frandzel during the Twenty-First Application Period in each of the activity categories set forth in Section D of the SEC Guidelines.[4]

## I. CASE BACKGROUND AND STATUS

### A. SEC Action Background

1. On February 25, 2009, the SEC filed a complaint against certain of the Westridge Entities, Greenwood and Walsh as well as J. Walsh and Robin Greenwood as relief defendants. While the allegations of the SEC Action are of record in this proceeding and will not be recounted here, by way of summary, in its complaint, the SEC alleges that Greenwood and Walsh, using these certain Westridge Entities, orchestrated a complex fraudulent investment scheme whereby rather than investing the monies in the manner they represented to investors they misappropriated the funds to "furnish lavish and luxurious lifestyles". The SEC alleges that Walsh's and Greenwood's actions violated Section 17 (a) of the Securities Act of 1933, Section 10(b) of the Securities Exchange Act of 1934, and Sections 206 (1), (2), and (4) of the Investment Advisers Act of 1940.

2. Because the fraud was ongoing, in order to preserve the *status quo* and protect the Court's ability to approve a fair distribution for victims of the fraud, the SEC sought an order which, among other things, froze certain of the defendants' assets, prevented the defendants from destroying, altering or concealing documents, and appointed a receiver to take control of the Westridge Entities named in the complaint.

3. On February 25, 2009, the District Court entered its Order appointing Robb Evans & Associates, LLC as the temporary receiver ("SEC Initial Receivership Order"). (See, Document No. 2.) Specifically, the Court ordered the Receiver to:

---

[4] For purposes of this Twenty-First Application, the term "SEC Guidelines" refers to the Billing Instructions for Receivers in Civil Actions Commenced by the U.S. Securities and Exchange Commission.

> (1) preserve the *status quo;* (2) ascertain the extent of commingling of funds among WGTI, WGTC and Westridge; (3) ascertain the true financial condition of WGTI, WGTC and Westridge and the disposition of investor funds; (4) prevent further dissipation of the property and assets of WGTI, WGTC and Westridge; (5) prevent the encumbrance or disposal of property or assets of WGTI, WGTC and Westridge and the investors; (6) preserve the books, records and documents of WGTI, WGTC and Westridge; (7) be available to respond to investor inquiries; (8) protect the assets of WGTI, WGTC and Westridge from further dissipation; and (9) determine if WGTI, WFTC and Westridge should undertake a bankruptcy filing.

4. To accomplish the foregoing, the SEC Initial Receivership Order provided the Receiver with various powers including, but not limited to, the power to:

   (a) Take and retain immediate possession of all of the assets and property of WGTI, WGTC and Westridge and all entities they control or have an ownership interest in …;

   (b) Have exclusive control of, and be made the sole authorized signatory for, all accounts at any bank, brokerage firm or financial institution that has possession or control of any assets or funds of WGTI, WGTC and Westridge and all entities they control or have an ownership interest;

   (c) Pay from available funds necessary business expenses required to preserve the assets and property of the WGTI, WGTC and Westridge and all entities they control or have an ownership interest …; and

   (d) Engage and employ persons, including accountants, attorneys and experts, to assist in the carrying out of the receiver's duties and responsibilities hereunder.

5. On May 22, 2009, the Court entered an order for a preliminary injunction (Document No. 100) in which it ordered, among other things, that the Receiver should continue to serve in this proceeding with all of the duties and powers set forth in the SEC Initial Receivership Order.

B.  CFTC Action Background

6.  On February 25, 2009, the CFTC filed a complaint against Walsh, Greenwood and certain of the Westridge Entities.[5] In the interest of judicial economy, the allegations of the CFTC will not be repeated in detail here. By way of summary, similar to the allegations in the SEC Action, the CFTC also alleged that Walsh and Greenwood, using the named Westridge Entities, devised and carried out a complex scheme in which they "misappropriated at least $553 million from commodity pool participants." The CFTC further alleges that Walsh and Greenwood were able to conceal their fraud and trading losses for over a decade by providing false representations and account statements to investors. The CFTC alleges that Walsh's and Greenwood's actions violate Sections 4b(a) (2) and 4(1) (A) & (B) of the Commodity Exchange Act, 7 U.S.C. Sections 6b(a)(2) and 6(1) (A) & (B), and Section 4b(a) (1) of the Commodity Exchange Act as amended by the Food, Conservation, and Energy Act of 2008.

7.  Because the Defendants were still operating the commodity pool there was a substantial threat that the fraud would continue. Therefore, in order to immediately stop the fraudulent conduct and preserve the Court's ability to grant effective relief to the investors, the CFTC sought an order which, among other things, froze the assets owned, managed, held by or were controlled by the Defendants, prohibited the Defendants from destroying or denying agents of the CFTC access to inspect and copy records, and appointed a receiver to take control over the assets of the Defendants.

8.  Consequently, on February 25, 2009, the District Court entered its Order appointing Robb Evans & Associates, LLC as the temporary receiver ("CFTC Initial Receivership Order") (Document No. 2). Some of the duties and powers the conferred on the Receiver in the CFTC Initial Receivership Order include:

---

[5] In the CFTC Action, Westwood Capital Management Enhancement Funds Inc., WG Trading Company LP, WGI LLC, K &L Investments and J. Walsh were also named as relief defendants.

      a.      Assume full control of the corporate Defendants and Relief Defendants and any business entities owned by any Defendant or Relief Defendant;

      b.      Take exclusive custody, control, and possession of all the funds, property, mail and other assets of, in the possession of, or under the control of the Defendants or Relief Defendants, wherever situated;

      c.      Preserve, hold and manage all receivership assets, and perform all acts necessary to preserve the value of those assets, in order to prevent any loss, damage or injury to Defendants' or Relief Defendants' customers or clients;

      d.      Prevent the withdrawal or misapplication of funds entrusted to the Defendants, or Relief Defendants, and otherwise protect the interests of customers, clients, pool participants or investors;

      e.      Manage and administer the assets of the Defendants and Relief Defendants by performing all acts incidental thereto that the Receiver deems appropriate …; and

      f.      Choose, engage and employ attorneys, accountants, appraisers, and other independent contractors and technical specialists, as the Receiver deems advisable or necessary in the performance of duties and responsibilities under the authority granted by this Order.

9.      On May 22, 2009, the Court entered an order for a preliminary injunction (Document No. 108) in which it ordered, among other things, that the Receiver should continue to serve in this proceeding with all of the duties and powers set forth in the CFTC Initial Receivership Order.

      C.      <u>The Receiver's Initial Actions</u>

10.      The Receiver's duties set forth in both the SEC Initial Receivership Order and the CFTC Initial Receivership Order are colossal. Not only were the investors defrauded out of a staggering amount of money, but because of the nature of the investments implemented by Walsh and Greenwood, the Receiver was required to act swiftly to identify the current investments and unwind them in a manner that would not result in further damage to the investors and would preserve the estate assets.

11. After seeking input from the SEC, the CFTC, and investment bankers, among others, the Receiver wasted no time in managing an orderly liquidation of the hedged portfolio, identifying, evaluating and securing the assets of the Westridge Entities, Walsh, and Greenwood, determining the positions carried on the books and records of the Westridge Entities for the investors and performed extensive and detailed forensic accounting on the Westridge Entities. After completing its initial work on this matter, the Receiver, on May 27, 2009, filed a report of activities from February 25, 2009 through May 22, 2009, in which it detailed for the Court and all interested parties the exact steps it had taken to fulfill the Court's directives to it and in both cases and the results it had achieved in the first ninety (90) days of the Receivership.[6]

12. In March 2011, the Court approved the Receiver's Distribution Plan. Thereafter, several investors filed an appeal, including an emergency motion before the Second Circuit Court of Appeals to stay the disbursement of funds to investors, which was summarily rejected by the Second Circuit. After the stay motion was denied by the Second Circuit, the Receiver disbursed $814,320,547.33 to investors. The Receiver also prepared for and attended oral argument before the Second Circuit Court of Appeals to defend this Court's first distribution order, which was ultimately affirmed by the Second District.

13. In order to maximize the recovery to investors, the Receiver commenced litigation against certain third-party "winning" investors pending before this Court and in the New York state court. In addition, the Receiver has engaged in substantive settlement discussions with several of the "winning" investors, which has resulted in numerous settlements in favor of the estate. The Receiver continues with its prosecution and settlement efforts to resolve claims against the "winning" investors.

14. The Receiver is also continuing to monitor the litigation involving a land deal known as the "Sweetwater Project." This is a matter in which Walsh contributed approximately $3,000,000.00 in equity to Sweetwater Pointe, LLC, in order to purchase approximately 85 acres

---

[6] The Receiver's report is document number 102 in the SEC Action and document number 110 of the CFTC Action.

of land in Delaware for improvement. The ownership entity also obtained a $6,000,000.00 loan from Lehman Brothers. The project is currently the subject of litigation involving the Delaware Department of Transportation, as there is a dispute as to whether the borrowing entity actually owns a portion of the land.

15. In December 2012, the Court approved the Receiver's second distribution proposal, pursuant to which the Receiver requested authority to distribute to investors the sum of $40 million. The Court's Order approving the second distribution proposal provided that the Receiver could distribute the funds on January 31, 2013. As was the case with the Court's approval of the Receiver's initial distribution plan, several of the limited partners filed an appeal of the Court's Order to the United States Second Circuit Court of Appeal, and in this regard, the Second Circuit issued a stay thereby preventing the Receiver from making the second distribution. In April 2013, the Second Circuit issued its Order approving in total the Receiver's initial proposed distribution plan, thereby rendering the appeal of the second distribution proposal moot. As a result, in April 2013, the Receiver distributed $40 million to investors.

16. The Receiver has completed the sale of the Grand Central Pony farm, which resulted in a net recovery to estate in the sum of $14,354,520.23.

17. The Receiver has pursued "winning" investors in the "clawback" litigation and has engaged in settlement discussions with various "winning" investors. As of June 30, 2014, the Receiver has recovered approximately $87,000,000.00 in clawback settlements.

18. The Receiver finalized stipulations with the U.S. Attorney's Office regarding the subordination of IRS claims to those held by various investors, as well as a similar stipulation with the State of New York concerning any potential claims that it may assert. Thereafter, the Receiver obtained approval of the stipulations as well as approval to make a third interim distribution in the sum of $75,712,831.

19. Many of the investors have pursued their own independent claims against insurers. As a result, the Receiver has been forced to respond to various third-party discovery requests, including document requests.

D.   Current Case Status

20.   The Receiver is continuing with its efforts to wrap up final issues pertaining to the closing of the Receivership Estate, including, but not limited to, tending to certain post-closing issues arising from the sale of the Liberty Hill project, as well as continuing to engage in ongoing communications with the CFTC, SEC, and other investors regarding the Receivership Estate, including, but not limited, resolving issues regarding the consent orders/judgments against the corporate defendants in these matters.

21.   Attached hereto as Exhibit "A" is the financial summary entitled Receiver Administrative Expenses and Fund Balance by Month, summarizing the receipts and expenses of the receivership estate incurred from the inception of the Receivership on February 25, 2009, to December 31, 2019. As of December 31, 2019, the total funds collected by the Receiver from the inception of the Receivership were $1,030,229,960.71, and the Receiver had disbursed to investors the sum of $978,343,168.17.

## II.   FEES AND EXPENSES REQUESTED

22.   In connection with the Twenty-First Application Period, the following compensation is requested:

- Receiver: $14,408.10 in fees and reimbursement of $22,558.79 in out-of-pocket expenses;

- Frandzel: $42,830.00 in fees and reimbursement of $3,149.82 in out-of-pocket expenses; and

- Barnes & Thornburg LLP: $1,138.50 in fees.

23.   These amounts generally reflect and are determined primarily on the basis of the hours worked by the Receiver and the attorneys and staff of Frandzel and Barnes. These amounts reflect the hourly rates in effect at the time services were rendered.

24.   The following declarations are submitted in support of the fees and expenses requested in this Twenty-First Application:

A. Declaration of Brick Kane on behalf of the Receiver. Attached as exhibits to Mr. Kane's Declaration are the Receiver's Fee Schedules showing the total fees billed and hours worked during the Twenty-First Application Period by the Receiver's personnel along with their individual billing rates. Also, attached as an exhibit to Mr. Kane's declaration is a spreadsheet compiled by the Receiver's staff which itemizes the fees billed as well as the costs the Receiver incurred during the Twenty-First Application Period.

B. Declaration of Craig A. Welin on behalf of Frandzel. Attached as exhibits to Mr. Welin's Declaration are Frandzel's Fee Schedules showing the total fees billed and hours worked during the Twenty-First Application Period by Frandzel's attorneys and staff and their individual billing rates.

25. The Receiver, Frandzel, and McKenna filed their First Application for Allowance of Compensation and Reimbursement of Expenses Incurred during the period February 25, 2009 through May 31, 2009 (the "First Application") on December 24, 2009. The First Application was approved in its entirety by the Court by Orders entered on approximately February 23, 2010. The Receiver, Frandzel, McKenna, Cole and Anthony filed their Second Application for Allowance of Compensation and Reimbursement of Expenses Incurred during the period June 1, 2009 through December 31, 2009 ("Second Application") on July 2, 2010. The Second Application was approved in its entirety by Court Orders entered on July 8, 2010. The Receiver, Frandzel, McKenna, Cole and Anthony filed their Third Application for Allowance of Compensation and Reimbursement of Expenses Incurred during the period July 1, 2010 through December 31, 2010 ("Third Application") on October 15, 2010. The Third Application was

approved in its entirety by Court Orders entered on approximately October 20, 2010. The Receiver, Frandzel, McKenna, Cole and Anthony filed their Fourth Application for allowance of compensation and reimbursement of expenses incurred during the period July 1, 2010 through December 31, 2010 ("Fourth Application") in May 2011. The Fourth Application was approved in its entirety by Court Orders entered on approximately May 20, 2011. The Receiver, Frandzel, McKenna, Cole, and Anthony filed their Fifth Application for Allowance of Compensation and Reimbursement of Expenses incurred during the period July 1, 2011 through December 31, 2011 in November 2011, which was improved in its entirety by Orders of the Court entered on approximately December 22, 2011. The Receiver, Frandzel, and McKenna filed their Sixth Application for Allowance of Compensation and Reimbursement of Expenses during the period July 1, 2011 through December 31, 2011, in July 2012, which was approved in its entirety by Orders of the Court entered on approximately September 18, 2012. The Receiver, Frandzel, and McKenna filed their Seventh Application for Allowance of Compensation and Reimbursement of Expenses during the period January 1, 2012 through June 30, 2012 in December 2012, which was approved in its entirety by Orders of the Court issued on December 21, 2012. The Receiver, Frandzel, and McKenna filed their Eighth Application for Allowance of Compensation and Reimbursement of Expenses during the period July 1, 2012 through December 31, 2012 in July, 2013, which was approved in its entirety by Orders of the Court issued on July 8, 2013. The Receiver, Frandzel, and McKenna filed their Ninth Application for Allowance of Compensation and Reimbursement of Expenses during the period January 1, 2013 through June 13, 2013, in November 2013, which was approved in its entirety by Orders of the Court issued on November 15, 2013. The Receiver, Frandzel and McKenna filed their Tenth Application for Allowance of Compensation and Reimbursement of Expenses during the period July 1, 2013

through December 31, 2013 in July 2014, which was approved in its entirely by Orders of the Court issued on August 21, 2014. The Receiver, Frandzel, and McKenna filed their Eleventh Application for Allowance of Compensation and Reimbursement of Expenses During the Period January 1, 2014 through June 30, 2014 in December 2014, which was approved in its entirety by Orders of the Court issued on approximately December 16, 2014. The Receiver, Frandzel, McKenna filed their Twelfth Application for allowance of compensation and reimbursement of expenses during the period July 1, 2014 through December 31, 2014, in June 2015, which was approved in its entirety by Orders of the Court, issued on approximately June 8, 2015. The Receiver, Frandzel and Dentons filed their Thirteenth Application for Allowance of Compensation and Reimbursement of Expenses During the Period of January 1, 2015 through June 30, 2015 in December, 2015, which was approved in its entirety by Orders of the Court, issued on approximately January 4, 2016. The Receiver, Frandzel and Dentons filed their Fourteenth Application for Allowance of Compensation and Reimbursement of Expenses During the Period of July 1, 2015 through December 31, 2015, in May 2016, which was approved in its entirely by Orders of the Court issued on approximately June 1, 2016. The Receiver, Frandzel and Diamond filed their Fifteenth Application for Allowance of Compensation and Reimbursement of Expenses during the period of January 1, 2016 through June 30, 2016, in December 2016, which was approved in its entirety by Orders of the Court issued on approximately January 11, 2017. The Receiver, Frandzel and Diamond submitted their Sixteenth Joint Application for Allowance of Compensation and Reimbursement of Expenses During the Period of July 1, 2016 through December 31, 2016, in August 2017, which was approved in its entirety by Orders of the Court entered on approximately August 22, 2017. The Receiver, Frandzel, Diamond and Harneys submitted their Seventeenth Joint Application for Allowance of

Compensation and Reimbursement of Expenses during the period of January 1, 2017 through June 30, 2017, in March 2018, which was approved in its entirety by Orders of the Court entered on approximately March 28, 2018. The Receiver and Frandzel submitted their Eighteenth Joint Application for Allowance of Compensation and Reimbursement of Expenses during the period of July 1, 2017 through December 31, 2017 in September 2018, which was approved in its entirety by Orders of the Court issued on approximately September 24, 2018. The Receiver and Frandzel submitted their Nineteenth Joint Application in June 2019, which was approved by Orders of the Court entered on approximately June 17, 2019. The Receiver submitted its Twentieth Joint Application in December 2019, which was approved by Orders of Court entered on approximately January 21, 2020. None of the firms have received retainers in this matter.

## III. SERVICES RENDERED BY THE RECEIVER AND FRANDZEL DURING TWENTY-FIRST APPLICATION PERIOD

26. Receiver: Total fees of $14,408.10 and total costs of $22,558.79 as detailed in Exhibit "A".

    A. Asset Disposition and Asset Analysis & Recovery. The Receiver's work in this category involved resolving maintenance issues/expenses for the 20 Wheeler Road property.

    B. Case Administration. The Receiver's work in this category included ongoing communications with various defrauded investors concerning distribution issues, and preliminary analysis regarding issues to close the estate, including the form of consent orders for the various defendants.

    C. Accounting/Auditing: The Receiver's work in this category included processing accounting payables and updating accounting information for the estate; bank reconciliations; and preparation of information for distribution to investors.

D.  <u>Tax Issues</u>:  The Receiver's work in this category included reviewing various tax returns for certain receivership entities and related entities; and providing assistance to the tax accountants as they prepared various returns.

E.  <u>Data Analysis</u>:  The Receiver's work in this category focused primarily on preparation of documents to include on the Receiver's public website.

27.  As stated in Mr. Kane's declaration, the Receiver and its staff observed the policies of the SEC Guidelines in connection with its expenses during the Twenty-First Application Period.

28.  <u>Frandzel</u>:  Total fees of $43,830.00 and total costs of $3,149.82 as detailed in Exhibit "A".

A.  <u>Case Administration, Asset Disposition, and Asset Analysis/Recovery</u>: Frandzel's work during the Twenty-First Application Period in this category included, among other things, ongoing monitoring of the Tribune proceedings, which involve a $4,000,000 "clawback" claim against one of the receivership entities; assisting the Receiver with various post-closing issues regarding the sale of the Liberty Hill property; and providing ongoing assistance to the Receiver as necessary throughout the course of the proceedings.

29.  As stated in Mr. Welin's declaration, Frandzel observed the policies of the SEC Guidelines in connection with its expenses during the Twenty-First Application Period.

30.  In addition, as noted in the accompanying Declaration of Brick Kane, the Receiver has incurred de minimis legal fees and expenses by Barnes for fees in the sum of $1,138.50.

## IV. CONCLUSION

WHEREFORE, PREMISES CONSIDERED, the Receiver, Frandzel and Barnes respectfully requests that the Court:

(a) grant interim approval of the Receiver's compensation in the amount of $14,408.10;

(b) grant interim approval of the Receiver's request for reimbursement of its out-of-pocket expenses in the amount of $22,558.79;

(c) grant interim approval of Frandzel's compensation of fees in the amount of $42,830.00;

(d) grant interim approval of Frandzel's request for reimbursement of its out-of-pocket expenses in the amount of $3,149.82;

(e) grant interim approval of Barnes' compensation of fees in the amount of $1,138.50;

(f) authorize the Receiver to pay, within 10 days from the entry of an Order approving this Twenty-First Application, the approved fees and expenses set forth above; and

(g) grant such other relief as the Court deems appropriate.

Dated: June 29, 2020

> /s/ Craig A. Welin
> _____
> Craig A. Welin, Esq.
> Admitted Pro Hac Vice in the United States District Court-Southern District of New York
> FRANDZEL ROBINS BLOOM & CSATO, L.C.
> 1000 Wilshire Boulevard, 19th Floor
> Los Angeles, California 90017-2427
> Telephone: (323) 852-1000
> Facsimile: (323) 651-2577
> E-mail: cwelin@frandzel.com
> Co-Counsel for Receiver
> Robb Evans & Associates LLC